USDC SCAN INDEX SHEET

















JOEH   7/5/06    8:45

3:03-CV-00371   EYE LASER CARE V. MDTV

*166*

*P/A.*

1  John R. Mayer (#197765)
   John R. MAYER, LLP
2  2550 5th Ave. Suite 520
   San Diego, CA 92103
3  Tel: 619-794-2651
   Fax - 619-794-2653
4
   JEFFREY H. GREGER, PC
5  2306 South Eads Street
   Arlington, VA 20022
6  Tel: 571-331-4949
   Fax: 703-979-3242
7
   CARL A. SALISBURY
8  HEATHER A. KORSGAARD
   KILLIAN & SALISBURY, P.C.
9  77 Brant Avenue, Suite 115
   Clark, New Jersey  07066
10 Telephone: (732) 827-8600
   Facsimile:  (732) 827-0117
11
   Attorneys for Defendants and Third-Party
12 Plaintiff MDTV MEDICAL NEWS NOW, INC.

13

   **FILED**

   **06 JUL -3 PM 2:09**

   CLERK, U.S. DISTRICT COURT
   SOUTHERN DISTRICT OF CALIFORNIA

   BY:          DEPUTY

                **UNITED STATES DISTRICT COURT**

14              **SOUTHERN DISTRICT OF CALIFORNIA**

15

16 EYE LASER CARE CENTER, LLC ET AL       CASE NO. '03 CV 0371BEN (AJB)
17           Plaintiffs
                                          **MDTV MEDICAL NEWS NOW INC.'S**
   v.                                     **AND PAUL ARGEN'S MEMORANDUM**
18                                        **AND POINTS AND AUTHORITIES IN**
   MDTV MEDICAL NEWS NOW, INC. and        **SUPPORT OF ITS MOTION FOR**
19 PAUL ARGEN                             **SUMMARY JUDGMENT ON NON-**
                                          **LIABILITY AS TO ALL COUNTS OF**
20           Defendants/Cross and Third   **WARREN CROSS MD AND NORMAN**
             Party Plaintiff,             **RAPPAPORT MD**
21 v.
                                          Judge: Honorable Roger T. Benitez,
22 EYE LASER CARE CENTER, LLC ET AL       Presiding
   and HECTOR J. GUALDA, RICHARD
23 SAX et al.                             Date:  July 31, 2006
                                          Time:  10:30 a.m.
24           Defendants.                  Dept:  3

25

26

27

28

   MDTV-MEMO IN SUPPORT

                          '03 CV 0371BEN (AJB)

1                                    TABLE OF AUTHORITIES CITED

2

3    *Anderson v. Liberty Lobby, Inc.,*

4           477 U.S. 242, 255(1986).

5    *Barber v. Colorado I.S.D.,*

6           901 S.W.2d 447(Tex. 1995).

7    *Carousel's Creamery, L.L.C. v. Marble Slab Creamery, Inc.,*

8           134 S.W.3d 385 (Tex.App. 01/15/2004)

9    *Celotex Corp. v. Catrett,*

10          477 U.S. 317(1986).

11   *Collins v. McCombs,*

12          511 S.W. 745(Tex.App. 1974)

13   *Dallas Farm Machinery Co. v. Reaves,*

14          158 Tex. 1(1957)

15   *Hubacek v. Ennis State Bank,*

16          159 Tex.166 (1958).

17   *In re Prudential Ins. Co. of Am.,*

18          148 S.W.3d 124(Tex. 2004).

19   *Komet v. Graves,*

20          40 S.W.3d 596 (Tex.App. Dist.4 01/31/2001).

21   *Matsushita Elec. Indus. v. Zenith Radio Corp.,*

22          475 U.S. 574(1986).

23   *Vessell v. DPS Associates of Charleston, Inc.,*

24          148 F.3d 407(4th Cir. 1998).

25

26

27

28

This Memorandum of Points and Authorities is being filed in Support of the Motion of Defendant/Cross and Third Party Plaintiff MDTV Medical News Now, Inc., (MDTV) and Paul Argen (ARGEN) filed concurrently herewith.

I. INTRODUCTION

Plaintiff doctors Stephen Weinstock, Lee Nordan, Warren Cross, Michael Mazaheri, Herbert Neveyas are all medical practitioners specializing in Ophthalmology. Plaintiff doctor Norman Rappaport is medical practitioner specializing in Plastic and Reconstructive Surgery. Plaintiff Eye Laser Care Center LLC is a business entity owned by Doctor Lee Nordan and his business partner, attorney Richard Sax.

Defendant MDTV Medical News Now, Inc., is a New Jersey entity in the business of providing medical information news to the public and provides marketing and advertising services to medical practitioners. (MDTV). Defendant Paul Argen, a resident of New Jersey is the CEO of MDTV.

MDTV started business in 1998. MDTV contracted separately with each plaintiff doctor agreeing to provide certain marketing and advertising services for the doctor's practices revolving around a 30-minute television program produced by MDTV called "MDTV Medical News Now... ", which airs throughout the geographic United States in selected cable markets. Each television show featured one of the plaintiff doctors as a guest medical expert. In addition to its own MDTV television show featuring guest doctors, MDTV offers advertising and marketing services to its guest doctors for use in connection with the television show. The doctors paid MDTV to produce the show and

1  receive videotapes for a licensed use of the show in their offices.  An option was provided

2  whereby the Doctors could pay MDTV to air the MDTV show on cable television for

3  added exposure and thereby serve as a basis for a comprehensive marketing plan.

4          MDTV's contract with the Plaintiff Doctors contained certain restrictive covenants

5  limiting the licensed use and limiting airing competing medical information

6

7  videos/television programs. The contracts also provided some similar but some different

8  conditions and terms unique to each plaintiff doctor.

9

10  Procedural Posture

11          A detailed version of the procedural posture of this case is contained within the

12  MDTV Motion for Partial Summary Judgment as to Stephen Weinstock and the

13  Weinstock Laser Eye center, filed concurrently and incorporated herein by reference, and

14

15  omitted herein for the sake of redundancy.

16

17          MDTV has dismissed all its counterclaims as to Drs. Cross and Rappaport. The

18  only claims pending directly involving Drs. Cross and Rappaport are these doctors

19  numerous claims couched in tort and breach of contract claims against MDTV. All claims

20

21  by these doctors are predicated on alleged breach of contract for failed advertising or tort

22  claims associated with the claim of advertising. MDTV now moves the Court for a grant of

23  summary judgment as to all claims asserted by Warren Cross, MD, and Norman Rapport

24  MD.

25

26

27

28

MDTV-MEMO IN SUPPORT

1

2    II. STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

3         MDTV files concurrently herewith a separate Statement of Materials Facts Not in

4    Dispute in Support of this Motion For Summary Judgment On Non-liability As To All

5    Counts Of Warren Cross MD and Norman Rappaport MD; and MDTV files concurrently

6

7    herewith Notice of Lodgment of Exhibits in Support of same. Both filings are incorporated

8    herein by reference.

9

10   III. APPLICABLE LAW.

11        A. LAW ON MOTION FOR SUMMARY JUDGMENT

12

13        On a motion for summary judgment, it is the movant's burden to show an absence

14   of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325(1986).

15   Federal Rule of Civil Procedure 56(e) shifts the burden to the non-movant to "go beyond

16   the pleadings and by...affidavits, or by the 'depositions, answers to interrogatories, and

17

18   admissions on file,' designate 'specific facts that show a genuine factual issue for trial.'"

19   *Celotex Corp.*, 477 U.S. at 324.

20        "[M]ere allegations or denials" will not suffice to discharge a party' burden. FRCP

21   56(e).  All legitimate factual inferences must be made in favor of the non-movant.

22   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255(1986).  Rule 56(c) requires summary

23   judgment "against a party who fails to make a showing sufficient to establish the

24   existence of an element essential to that party's case, and on which that party will bear

25

26   the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.  Before determining no

27

28

genuine issue for trial exists, the court must conclude that no reasonable trier of fact could find for the non-movant. *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587(1986).

The Houston Doctors filed this diversity action asking the Court to apply the law of Texas. Complaint at ¶¶ 138,148,153,160,164,168,180,185,192, and 196.

IV. ARGUMENTS

When a non-moving party bears the burden of proving a claim, the moving party can meet its burden by proving the absence of evidence submitted by the non-moving party. *Celotex Corp.*, 477 U.S. at 325. The moving party need not disprove the other party's case. *Id.*

In the instant case, Plaintiff Doctors Rappaport and Cross must prove their claims. MDTV dismissed all its counterclaims against the Houston Doctors. MDTV need not disprove the Houston Doctors case. The Houston Doctors case is predicated on their PSA's with MDTV which included an agreement for the production of an educational MDTV show featuring the Houston Doctors as a guest. MDTV maintained ownership of and licensed airing rights for broader use of the MDTV show for an additional and optional fee. It is undisputed that MDTV produced a high quality network show and the Doctors were quite pleased with MDTV production of the show.

The PSA's also included offers for collateral advertising for use in connection with the option of airing MDTV show and other terms, which is why and where the dispute arises.

1    The Houston Doctors assert claims for breach of contract and numerous claims

2  sounding in tort all predicated on allegations of fraud and fraudulent inducement. For

3  good measure the Plaintiffs threw in a Federal RICO claim.

4    The Federal RICO claim was never formally dismissed although former Plaintiffs'

5  attorney Richard Sax represented to this Court during his recusal hearing that he

6  dismissed the RICO claim and informed Magistrate Judge Battaglia of that fact. Without

7  commenting further on the alleged affirmative act of attorney Sax, the Federal RICO

8  claim still stands as presented. A copy of the pertinent transcript page with the statement

9  of attorney Richard Sax from the March 11, 2004 recusal hearing is attached at MDTV

10  NOL Texas Doctors Ex L. The Federal RICO claim, Count 30, should be dismissed.

11

12

13  The Houston Doctors Breach of Contract Claim

14    Lack of evidence to support the claim.

15    The breach of contract claims should be dismissed for several reasons. The

16  Houston Doctors failed to maintain sufficient records whereby any fact-finder could

17  ascertain the success or failure of the MDTV marketing and advertising. The Doctors

18  claims of breach are predicated on failure to derive a satisfactory increase in revenue.

19  The Houston Doctors did not keep records which tracked revenues generated by the

20  medical practices in connection with MDTV from those distinguished as not from MDTV.

21  The Houston Doctors admit they received some revenues but cannot identify records

22  which reasonably support that fact.

23    When asked during discovery to produce records showing patients and surgery

24  revenues generated associated with the marketing or advertising associated with MDTV

25

26

27

28

1  the Houston Doctors refused claiming HIPPA confidentiality violations.  Doctor Norman

2  Rappaport was asked if he could code the patient identities with letters and thereby

3  produce files and evidence to show a connection between the $40,000 in revenue the

4  Doctor alleged is attributable to MDTV from non-MDTV practice revenue.  In response

5  Rappaport stated he could not do that because it was too difficult and because the readily

6  available electronic data on point was unfortunately destroyed when the software

7  program he purchased to replace MDTV's tracking crashed.  Dr. Rappaport produced no

8  financial records or evidence whereby one could verify and ascertain a base-line or any

9  basis for what revenues came from where.

10

11      Dr. Cross was asked the identical questions in discovery and responded with the

12  identical HIPPA violation response.  Dr. Cross did produce a few scant pages showing

13  some tracking results of MDTV leads, consults, and cases. The few pages produced

14  represent only a very short period of time coinciding with when the MDTV shows

15  featuring Dr. Cross and Dr. Rappaport aired.  The records produced make no mention of

16  revenue. Dr. Cross produced no financial records whereby a reasonable person could

17  ascertain a starting base-line revenue or any basis for determining the revenue

18  generated before MDTV, by MDTV, or after MDTV.

19

20      Despite being asked to produce all documents that the Houston Doctors intend to

21  rely on, each doctor was only able to come up with not more than 85 pages of

22  documents, most of which related to the PSA and none of which produce a triable issue

23  in this case.  Ample opportunity to supplement discovery was provided yet the Houston

24  Doctors have refused and failed to supplement.

25

26

27

28

1    MDTV need not disprove the Houston Doctors case but did produce to the Doctors

2    over 4,000 pages of documents including but not limited to documents verifying and

3    referencing the hundreds of times the MDTV show featuring the Houston Doctors aired

4    and hundreds of times MDTV placed advertising in connection with the MDTV show

5    featuring the Houston Doctors.  MDTV's records show the revenues the Houston Doctor's

6    invested with MDTV but only the Doctor's maintain their own financial revenue results

7    and records which they refused to produce.

8

9

10   The merger and integration clause

11   The Houston Doctor's PSA included a merger and integration clause which stated

12   that the Doctors were not relying on any oral or written prior or contemporaneous

13   representations and the PSA was the entire agreement confined within the four corners

14   of the document. (PSA's at page 5).

15   The parol evidence rule is an established rule of law that prohibits allegations of

16   inconsistent prior or contemporaneous agreements, both oral and written. *Hubacek v.*

17   *Ennis State Bank*, 159 Tex. 166, 170, 317 S.W.2d 30, 31 (1958).   Inconsistent

18   statements will not be enforced in the face of a valid, integrated agreement. *Id.*

19   The Houston Doctors' Complaint contains numerous allegations, too many to

20   mention and parse out, each of which directly contradicts the PSA plain language.

21   The Houston Doctors have the burden of producing evidence that the parole evidence

22   rule does not apply as to all issues contained in the plain language of the contract.

23   Dr. Cross testified that MDTV met each of contractual obligations including

24   charging exactly as indicated in the PSA.  Dr. Cross belatedly complains of agreement

25

26

27

28

terms not included in the PSA such as an unwritten but verbally promised low channel number location for airing the MDTV show.  The undisputed facts and evidence establishes that Dr. Cross knew that the Dr. Rappaport was airing on Channel 74 prior to executing the PSA and knew the limitations of leased access channel placement.  Dr. Cross' allegations violate the parole evidence rule as applied to breach of contract.

Moreover, each of the Doctor's expressly authorized all MDTV show time airings, which were optional, in advance. The Doctors paid in advance, and each knew the scheduled channel, time and cost for every airing prior to the event. Hence, even assuming arguendo that there is any merit to the Doctor's breach of contract claims, with respect to the PSA as written, each doctor made a novation of the agreement each time they agreed to move forward with their authority and new payments in advance for optional services[1].

A review of Doctor Rapport's Breach of Contract pleadings, at Complaint paragraphs 152-158,  reveals only a few substantive alleged breaches in paragraph 156.

At 156(a) Rappaport alleges only one new patient and revenue of only one-tenth what he paid for the guest appearance fee.  It is undisputed that Rappaport only paid $16,000.00 for a guest appearance fee on MDTV representing one-half the normal fee-charge for production and delivery of tapes of the production.  After opting for the airings Rappaport alleges breach due to revenue failure.  One-tenth of $16,000.00 would be one patient generating $1,600.00 of revenue.  Rappaport's own testimony belies such a low

---

[1]   The allegations appear to insinuate that the doctor's were hoodwinked into continuing to purchase more and more optional services.  The fact is the doctors are extremely well educated and certainly not unsophisticated parties lacking in intelligence as to marketing risks.

1  number as he admitted he invested a grand total of about $40,000.00 with MDTV and

2  broke even with incoming revenue.

3      The remaining allegations appear couched in tort. Subparagraph 156(d) alleges a

4  breach for soliciting competition but does not plead that MDTV breached the exclusivity

5
6  provision and contracted with or aired a MDTV show with another plastic surgeon in

7  violation of the agreement.

8      To the extent the breach claims incorporate by reference earlier paragraphs within

9  the Complaint each paragraph is predicated on the allegation that the MDTV show

10  featuring the Houston Doctors as guest was in fact "advertising." As explained in more

11  detail below and as admitted by Rappaport himself, the MDTV show was not an

12  infomercial and was not "advertising," it was medical educational show.

13
14      Notwithstanding that a written contract with a merger clause may be traversed for

15  claims truly grounded in tort, such as fraud in inducement as alleged herein, as far as

16  breach of contract claims are concerned, the merger clause is enforceable. *Dallas Farm*

17  *Machinery Co. v. Reaves*, 158 Tex. 1, 12, 307 S.W.2d 233, 239-40 (1957) and See

18  *Carousel's Creamery, L.L.C. v. Marble Slab Creamery, Inc.*, 134 S.W.3d 385 (Tex.App.

19  01/15/2004). But see *Collins v. McCombs*, 511 S.W. 745, 747(Tex.App. 1974)

20
21  (distinguishing between true tort claims and breach of contract guised as a tort lacking

22  fraud elements). In the instant case there is no evidence MDTV never intended to

23  perform that which it promised, hence a necessary element of fraud absent in the facts of

24  this case.

25      The Houston Doctors have failed to establish admissible evidence to prove their

26  breach of contract claims in view of their failure to provide financial and pertinent patient

27
28

disclosures during discovery. Moreover, the merger and integration clause in the PSA prohibits the Doctors from asserting facts which directly contradict the plain language of the agreement between the parties. The Breach of Contract Claims at Counts 22 and 27 should fail.

### The Houston Doctors Claims couched in tort.

The Houston Doctors allege claims couched in tort, namely, Fraud, Negligent Misrepresentation, Deceptive Trade Practices, and Negligence, appearing in the Complaint at Counts 20, 21, 23, 24, 25, 26, 28, and 29. The Houston Doctors have not come forth with evidence to prove each element of the torts they allege.

Further, under Texas law, parties may contract so "long as their agreement does not violate the law or public policy." *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 129 (Tex. 2004). The Texas Occupational Code at §101.201(b)(4) forbids medical doctors from advertising that "contains a testimonial." The MDTV medical information show clearly contains patient testimonials which is permitted by third-party endorser such as MDTV.  MDTV is not a medical services provider to the public but instead a patient educator.

The Texas doctors allege that the MDTV show was "advertising" and fraudulently induced "advertising" at that, when the facts were fully disclosed and each knew that Texas doctors were prohibited from advertising with testimonials.  The MDTV business model has a unique application in Texas because by its very nature it conforms with a unique Texas limitation prohibiting doctor's from using patient testimonials in their own advertising.

1
By agreeing to advertise only <u>in connection with</u> an MDTV show featuring

2
themselves as a guest expert, and not using the MDTV show as advertising, but rather

3
only as an educational video, the parties stayed on the legal and ethical side of

4
complying with the law and Texas medical ethics. However, on hindsight, when the

5
6
advertising portion of the business model and marketing plan did not work, these two

7
Texas Doctors now jump-ship and claim that the MDTV show was advertising all along,

8
despite the ethical ramifications of their change in positions.

9
When asked in discovery to admit or deny as alleged that the MDTV show was an

10
"infomercial" Rappaport and Cross - both admitted it was not despite their complaint

11
alleging it was.  Both knew full well the MDTV show contains no medical advertising,

12
selling or direct response advertising.   Both knew it was an educational show with a third

13
14
party endorsement which they could piggy-back advertising on top of.  Indeed, this is a

15
core concept of the MDTV business model.

16
There are two possible legal interpretations. One is that the MDTV show is in fact

17
as the parties intended, a medical educational show with a third party endorsement

18
combined with a unique marketing plan which allows Doctors in Texas to supplement the

19
education show with advertising in connection with the show. The second possibility is

20
the show is in fact advertising and the parties to the contract are both participating in a

21
22
sham to circumvent the Texas law, in which case the contract is "saturated with fraud and

23
thus unenforceable," *Vessell v. DPS Associates of Charleston, Inc.*, 148 F.3d 407, 14 IER

24
Cases 316 (4th Cir. 1998).  MDTV submits that this contract is far from saturated with

25
fraud. Fraud requires fraudulent intent. The intent element is absent here.  The parties

26
27
28

1  discussed the "testimonial issue" at great lengths prior to embarking on the business plan

2  and all agreed the show was not advertising.

3      Moreover, the MDTV show and educational model has been blessed by the

4  Federal Trade Commission(FTC) and the Food and Drug Administration(FDA).  MDTV

5  produced a half-hour special show on ethical medical advertising in accordance with the

6  FTC regulations and avoiding unsubstantiated efficacy claims in medicine in accordance

7  with FDA regulations.  MDTV and the MDTV show have consistently been represented

8  respectively as a patient advocate and an informative patient educational show.

9

10     MDTV's interpretation is clearly supported by the evidence and establishes that

11 the parties' understood the MDTV show featuring the guest doctor with testimonials was

12 not advertising.   Whether a contract violates public policy is a question of law for the

13 Court to decide. *Barber v. Colorado I.S.D.*, 901 S.W.2d 447, 450 (Tex. 1995). If the Court

14 were to adopt the Houston Doctors' interpretation of the term "advertising" and construe

15 the term as the Houston Doctors now allege, contrary to their initial intention, the contract

16 by definition would violate Texas law.  Enforcement of an illegal contract under Texas law

17 violates public policy. *Komet v. Graves*, 40 S.W.3d 596 (Tex.App. Dist.4 01/31/2001).

18     Furthermore,  MDTV detrimentally relied on the doctor's representation of the

19 term.  MDTV has never promised any revenue guarantee based solely on the production

20 and airing of its own MDTV show. The doctors knew they had to use collateral advertising

21 in connection with the airing and use proven closing techniques to turn leads into sales.

22

23 Common sense dictates the doctors knew they could not sit back and do nothing and

24 expect revenue to flood in.

25

26

27

28

1         This Court should under the principals of estoppel, not allow these two Texas

2   Doctors to represent going into an agreement with the understanding that the MDTV

3   show is not advertising and then claim breach of the same agreement for fraud in

4   inducing the agreement claiming the opposite.

5         All the Claims sounding in tort alleged by the Houston Doctors fail because their

6   Complaint alleges tort claims predicated on the MDTV show as "advertising" whereas

7   with respect to these Houston Doctors, the parties indisputably never intended the PSA

8

9   to be so construed.

10        With respect to the PSA plain and unambiguous terminology, any construction of

11  "ad" or implied "advertising" was <u>for use in connection with the MDTV show.</u>"  At all

12  times, acting as the Doctors' agent, MDTV never charged a commission above and

13  beyond 15% for ads placed in connection with the MDTV show.

14

15

16  V. CONCLUSION

17

18        The Motion by MDTV for summary judgment of non-liability with respect to all

19  claims of the Houston Doctors, Norman Rappaport, MD and Warren Cross, MD should

20  be granted.

21  Respectfully Submitted by
    MDTV MEDICAL NEWS NOW INC.

22  AND PAUL ARGEN

23

24  By: _____ Date: July 3, 2006

25  John R. Mayer (#197765)

26  John R. MAYER, LLP
    2550 5th Ave. Suite 520

27  San Diego, CA 92103

28

**Certificate of Service**

Proof of Service Certification in accordance with Local Rule 5.2

Proof of Service Certification in accordance with Local Rule 5.2

I hereby certify that a copy of the foregoing  has been forwarded by hand delivery this 3rd day of July 2006 to all known current counsel for Plaintiff Doctors Rappaport and Cross, namely attorney of record, Robert D. Rowlett, 34762 Doheny Place, Dana Point, CA 92624;  and copies of same by prepaid overnight courier to Richard L. Sax, Esq., 2192 Palomar Airport Rd., 2d Floor, Carlsbad, CA 92008;  Michael Butler, Esq., Katz Butler McCumber & Quinn, 150 East Ponce de Leon Ave, Suite 250, Decatur, GA 30030;  Carl Salisbury, Killian and Salisbury, 77 Brant Ave, Suite 115, Clark, NJ;  and Jeffrey H. Greger, 2306 South Eads St. Arlington, VA 22202

John R. Mayer