US DISTRICT COURT INDEX SHEET










JOEH

3:03-CV-371 EYE LASER CARE CENTER, LLC V. MDTV MEDICAL NEWS

*184*

*P/A.*

| | |
|---|---|
| 1 | ROBERT D. ROWLETT – SBN: 176611 |
| | LAW OFFICE OF ROBERT D. ROWLETT |
| 2 | 34762 Doheny Place |
| | Dana Point, CA 92624 |
| 3 | Telephone: (949) 481-4078 |
| 4 | Attorneys for Plaintiffs and Counter-Defendant |
| | EYE LASER CARE CENTER, LLC |

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EYE LASER CARE CENTER, LLC., STEPHEN WEINSTOCK, MD, MICHAEL MAZAHERI, MD, NORMAN H. RAPPAPORT, DDS, MD, WARREN CROSS, MD, <br><br> Plaintiffs <br><br> v. <br><br> MDTV MEDICAL NEWS NOW INC., PAUL ARGEN, and DOES 1 through 30, inclusive, <br><br> Defendants | CASE NO.: 03-CV-0371RTB (AJB) <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF COUNTER-DEFENDANT EYE LASER CARE CENTER, LLC'S MOTION OF FOR SUMMARY JUDGMENT, OR ALTERNATIVELY FOR PARTIAL SUMMARY JUDGMENT** <br><br> Date: August 21, 2006 <br> Time: 10:30 a.m. <br> Crtrm: 3 <br><br> Judge: Hon. Roger T. Benitez |
| MDTV MEDICAL NEWS NOW, INC., <br><br> Third Party Plaintiff, <br><br> v. <br><br> HECTOR L. GUALDA, RICHARD L. SAX, WEINSTOCK LASER EYE CENTER, THE LASIK EYE CENTER, BELLAIRE LASER EYE CENTER, HOUSTON CENTER FOR PLASTIC SURGERY, <br><br> Third Party Defendants. | [Declarations of Lee Nordan, MD, Hector Gualda, Richard Sax, Esq. and Robert Rowlett, Esq.; Statement of Undisputed Facts; and Request for Judicial Notice filed concurrently herewith] <br><br> [ORAL ARGUMENT REQUESTED] |

# TABLE OF CONTENTS

|   |   |   | Page |
|---|---|---|------|
| I. | INTRODUCTION | | 1 |
| II. | BACKGROUND FACTS | | 2 |
| III. | LEGAL ANALYSIS & ARGUMENT | | 4 |

    A.    Standard For Summary Judgment.

    B.    Summary Judgment Should Be Granted On All Counts In Favor Of ELCC Based On The Absolute Litigation Privilege.

        1.    The Litigation Privilege Bars Count 1 for Breaches of Duties of Confidentiality and Loyalty; Count 2 for Tortious Interference; and Count 6 for Defamation.

        2.    The Litigation Privilege Bars Counts 3 and 4 for Breach of Contract and Breach of Duty of Good Faith and Fair Dealing, Respectively.

        3.    The Litigation Privilege Bars Count 5 for Conversion.

    C.    Partial Summary Judgment Is Warranted Because MDTV Has Not Established The Trade Secret Rights As Alleged in This Lawsuit.

        1.    MDTV Cannot Meet its Burden of Identifying the Trade Secret With Reasonable Particularity.

    D.    If MDTV'S Information Is Deemed Trade Secret, Summary Judgment Should Be Granted As To The Counts For Breaches Of Duties of Confidentiality And Loyalty (Count 1) And Conversion (Count 5) Because These Claims Are Pre-Empted By California's Uniform Trade Secret Act.

    E.    Summary Judgment Is Further Warranted Because MDTV Cannot Satisfy Its Burden To Present Sufficient Admissible Evidence to Support *Any* of Its Claims Against ELCC.

        1.    MDTV Cannot Establish Count 1 for Breach of Confidentiality and Loyalty because a Written Contract Exists.

        2.    MDTV Cannot Establish Count 2 for Tortious Interference Because It has Not and Cannot Establish Any Admissible Evidence to Demonstrate Any Interference with Prospective Business by ELCC.

        3.    Count 3 for Breach of Contract and Count 4 for Breach of the Covenant of Good Faith and Fair Dealing Cannot Stand Because MDTV Has Not Established Any Breach or of Any Confidential Information or Disclosure thereof by ELCC.

        4.    MDTV Has Not and Cannot Establish Any Admissible Evidence to Demonstrate Conversion by ELCC (Count 5) or any Damages From the Alleged Conversion.

5. MDTV Has Not and Cannot Establish Any Defamatory Statements Made by ELCC, or any Damages From the Alleged Defamation.

IV. CONCLUSION ............................................................................. 15

# TABLE OF AUTHORITIES

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986)

Accuimage Diagnostics Corp. v. Terarecon, Inc., 260 F. Supp. 2d 941 (N.D. Cal 2003)

Applied Equipment Corp. v. Litton Saudi Arabia, Ltd. (1994) 7 Cal. 4th 503

Aronson v. Kinsella, 58 Cal.App.4th 254, 263-65 (1997)

Berkla v. Corel Corp., 302 F.3d 909, 918 (9th Cir. 2002)

California Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc., 818 F2d 1466, 1468 (9th Cir. 1987)

Callaway Golf Co. v. Dunlop, 318 F.Supp.2d 216, 219-20 (D. Del. 2004)

Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 317 (1986)

Devereaux v. Abbey, 263 F3d 1070, 1076 (9th Cir. 2001) (en banc)

Digital Envoy, Inc. v. Google, Inc. 370 F.Supp.2d 1025 (N.D.Cal. 2005)

Forro Precision, Inc. v. IBM Corp., 745 F.2d 1283 (9th Cir. 1984)

Imax Corp. v. Cncema Techs. ,152 F. 3d 1161, 1165 (9th Cir. 1998)

ITT Telecom Products Corporation v. Dooley, 214 Cal.App.3d 307 (1989)

Kashian v. Harriman, 98 Cal.App.4th 892, 913 (2002)

Kewanee Oil Co. v. Bicron Corp., 416 U.S. 470, 475 (1974)

Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 588 (1986)

Pacific Gas & Electric Co. v. Bear Sterns & Co., 50 Cal.3d 1118, 1126 (1990)

Penalty Kick Management Ltd. v. Coca Cola Co., 318 F.3d 1284, 1297–98 (11th Cir.2003)

Roth v. Rhodes, 25 Cal.App.4th 530, 546 (1994)

Rusheen v. Choen, 37 Cal.4th 1048, 1194-1195 (2006)

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff and Counter-Defendant EYE LASER CARE CENTER, LLC. ("ELCC") submits this Memorandum of Points and Authorities in support of its Motion For Summary Judgment, or in the Alternative, for Partial Summary Judgment.

### I. INTRODUCTION

In this action, multiple plaintiffs are bringing similar claims against Defendants MDTV MEDICAL NEWS NOW, INC. ("MDTV") and its alter ego PAUL ARGEN ("ARGEN") related to breaches of each Plaintiff's agreement with MDTV and related misrepresentations. But as part of their scorched earth strategy, Defendants exasperated the underlying action by filing a Counterclaim and then a Third Party Complaint against each and every Plaintiff, their associated medical practice, and even a prior employee of Defendant. Looking beyond the smoke and unsubstantiated allegations, however, this case is simply about doctors and their practices who believed in the promises of ARGEN and procured the marketing services of MDTV only to realize that the services did not work, and that ARGEN and MDTV had misled each of them.

When each Plaintiff expressed concerns about MDTV's services and requested ARGEN adhere to his promises and the guarantee set forth in their respective agreement with MDTV, ARGEN refused and became belligerent. After filing this action, ARGEN's hostility became manifested in MDTV's unfounded Counterclaim against each Plaintiff and then a its Third Party Complaint against the doctors practices, Plaintiffs' attorney, and a potential witness against MDTV, Mr. Hector Gualda.

Summary judgment in this case is warranted because the allegations against ELCC in the Counterclaim stem directly from ELCC's actions in investigating and pursuing litigation, and thus, are protected and privileged litigation activities. Additionally, even if MDTV's claims were not barred by the litigation privilege, MDTV has not and cannot present the necessary admissible evidence to support the essential elements for each of the claims pled against ELCC. The crux of MDTV's allegations against ELCC are based on alleged communications and purported gathering of information in connection with this case and that such information constituted MDTV's trade secrets. MDTV, however, has failed to and cannot provide the required admissible evidence that

such information was indeed ever a trade secret, that ELCC ever acquired such trade secrets, and further that ELCC knew or should have know such information was improperly acquired.

If MDTV was indeed having its valuable trade secrets misappropriated, experiencing interference with its contractual relations, being defamed, and losing use of its property as alleged in the Counterclaim and Third Party Complaint, it is questionable why MDTV did not promptly, or for that matter, *ever*, move this Court for an injunction in this case.

The Counterclaim and the record further evidence Defendants' bad faith tactics of counter suing the Plaintiffs without legitimate basis and solely to intimidate them with a threat of liability and to improperly use such tactics to scrape any advantage possible. Moreover, when counsel for Plaintiffs demanded that MDTV provide factual support for any of its alleged causes of action, counsel for MDTV could provide none but rather pointed out that "sometimes the best defense is a good offense." See Declaration of Robert D. Rowlett ("Rowlett Dec.") at ¶3 and ¶4. This abuse of process must end. Pursuant to law and the evidence before the Court, summary judgment, or alternatively, partial summary judgment, is warranted for the reasons set forth herein.

## II. BACKGROUND FACTS

On or about February 24, 2003, Plaintiffs ELCC, Herbert Nevyas, M.D., Nevyas Eye Associates, Stephen Weinstock, MD, Michael Mazaheri, MD, , Norman H. Rappaport, DDS, MD, and Warren Cross, MD ("Plaintiffs") filed the underlying Complaint in this matter against MDTV and ARGEN, its alter-ego owner. The claims in the Complaint against the Defendants are based on their misrepresentations, violations and breaches of various obligations concerning info-mercials and other marketing and commercial commitments (the "Underlying Case") (Complaint referenced in Request for Judicial Notice [RFJN] #1.). Attorney Richard L. Sax ("Mr. Sax") filed the Complaint on behalf of his clients, the Plaintiffs (RFJN #1 and 2).

In retaliation for Plaintiffs' filing the Complaint, MDTV, on about September 5, 2003, filed the Counterclaim against each Plaintiff, alleging:

<u>Count One</u>: Breach of Duties of Confidentiality and Loyalty;

<u>Count Two</u>: Tortious Interference with Contractual Relations and Prospective Economic Advantage;

2
03-CV-0371 RTB
Memorandum of Points and Authorities Supporting Counter-Defendant ELCC's MSJ

| | |
|---|---|
| 1 | Count Three: Breach of Contract; |
| 2 | Count Four: Breach of Duty of Good Faith and Fair Dealing; |
| 3 | Count Five: Conversion; and |
| 4 | Count Six: Defamation. |

(RFJN #2, Counterclaim).[1]

MDTV also filed a Third-Party Action alleging identical counts plus Misappropriation of Trade Secrets against Plaintiffs' medical practices; Plaintiffs' attorney, Richard Sax, Esq. ("Mr. Sax"); and a potential witness against MDTV, Mr. Gualda.

The Counterclaim does not name any individuals who purportedly acted on ELCC's behalf other than Dr. Nordan and ELCC's attorney. (Counterclaim ¶¶21-25, 57, 59, 60 and Declaration of Lee T. Nordan, MD ("Nordan Dec.") at ¶25). The only "communications" made by ELCC were by: 1) Mr. Sax with his clients, the Plaintiffs, or with ARGEN; or 2) Dr. Nordan with his counsel or the other Plaintiffs (Counterclaim ¶¶57, 59). All communications expressly concerned the subject matters raised in the Complaint: MDTV's improper charges, and MDTV's operations "associated with [MDTV's] contracts" (Counterclaim ¶¶57, 59, 60 and Complaint ¶¶16-18). Each Plaintiff had a contract with MDTV (Complaint ¶¶16-18).

Throughout MDTV's Counterclaim, MDTV claims it has "trade secret or "confidential information." It claims its "unique, proprietary customer and pricing database, as well as its business plan and image plans, and other proprietary trade secret information" is comprised of: 1) a contract with physician client "to protect trade secrets and proprietary information and to prevent direct competition (Counterclaim ¶7); 2) "Certain business model details are provided also to physicians/clients bound to maintain the confidentiality of certain business model details which the physician *may* become privy to during the course of contractual relations with MDTV" (Counterclaim ¶7d); and 3) "Restricting access to confidential information on the company website by pass code to licensed physicians" (Counterclaim ¶7g).

---

[1] MDTV has dismissed the Counterclaim as to all Counter-defendants except ELCC and Dr. Weinstock.

Other allegations pertain to MDTV's employees' duties and access to its "trade secret" or confidential information" (Counterclaim ¶7). However, MDTV does not name any employees or former employees as a party in its Counterclaim (Counterclaim).

MDTV does not specify any "trade secret" or confidential information" given to ELCC (Id.). It simply claims that MDTV's "trade secrets" were communicated between the Plaintiffs by "informing each of the actual costs associated with MDTV's business plans and operations, including costs of purchasing cable television time, the sources thereof, and costs associated with producing adverting associated with contracts belonging to MDTV" (Counterclaim ¶59). MDTV does not and cannot allege that ELCC is MDTV's competitor nor that it hired or attempted to hire any of MDTV's former employees (Counterclaim, Nordan Dec. ¶¶28-29).

### III. LEGAL ANALYSIS & ARGUMENT

#### A. STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56 authorizes summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).[2] To defeat summary judgment, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Rule 56(e). However, a summary judgment motion cannot be defeated simply by alleging *some* factual dispute between the parties. To preclude the entry of summary judgment, the non-moving party must bring forth *material* facts, i.e., "facts that might affect the outcome of the suit under the governing law....Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). Moreover, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 588 (1986).

///

///

---

[2] All references to statutes herein are to Federal Rules of Civil Procedure, unless otherwise stated.

## B. SUMMARY JUDGMENT SHOULD BE GRANTED ON ALL COUNTS IN FAVOR OF ELCC BASED ON THE ABSOLUTE LITIGATION PRIVILEGE

The litigation privilege is codified by California Civil Code §47(b) which provides that a privileged publication or broadcast is one made in any judicial proceeding. This litigation privilege is recognized and applicable to state claims in the Ninth Circuit. Forro Precision, Inc. v. IBM Corp., 745 F.2d 1283 (9th Cir. 1984) [summary judgment granted in federal court case based on the litigation privilege as defense to state claim for tortious interference].

Although originally applied only to defamation actions, the privilege has been extended to *any* communication, not just a publication, having 'some relation' to a judicial proceeding, and to *all* torts other than malicious prosecution." Kashian v. Harriman, 98 Cal.App.4th 892, 913 (2002) [italics in original, bold added]. "The privilege extends beyond statements made in the proceedings, and includes statements made to initiate official action." Id. "If there is no dispute as to the operative facts, the applicability of the litigation privilege is a question of law. Any doubt about whether the privilege applies is resolved in favor of applying it." Id.

Furthermore, "[t]he litigation privilege is **absolute**; it applies, if at all, regardless whether the communication was made with malice or the intent to harm....[A]pplication of the privilege does not depend on the publisher's 'motives, morals, ethics or intent. The privilege applies to "any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." Aronson v. Kinsella, 58 Cal.App.4th 254, 263-65 (1997) [litigation privilege shields pre-litigation statements even if the particular statements were made with malice as long as the party making the statements was in good faith contemplating a suit].

"The purpose of the litigation privilege is to afford litigants and witnesses 'the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions.'...In other words, the litigation privilege is intended to encourage parties to feel free to exercise their fundamental right of resort to the courts for assistance in the resolution of their disputes, without being chilled from exercising this right by the fear that they may subsequently be sued in a derivative tort action arising out of something said or done in the context of the litigation."

Aronson, supra, 58 Cal.App.4th at pp. 263-65. "The privilege also extends to communications which have some relation to an anticipated lawsuit...[A] prelitigation statement is protected by the litigation privilege...when the statement is made in connection with a proposed litigation that is 'contemplated in good faith and under serious consideration.'" Id.

> This 'good faith and serious consideration' test derives from section 586, comment e of the Restatement Second of Torts....'An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding.' Section 587 of the Restatement Second of Torts states a <u>similar rule for a party to litigation</u>.

Id. and fn 4 (Emphasis added).

Furthermore, even where the gravamen of the alleged wrongful acts is conduct such as gathering evidence and interviewing witnesses as alleged in this case, such conduct is also protected by the litigation privilege. If the gravamen of the action is communicative, the litigation privilege extends to noncommunicative acts that are necessarily related to the communicative conduct. Rusheen v. Choen, 37 Cal.4th 1048, 1194-1195 (2006).

As result of the absolute litigation privilege provided by California law, none of the claims alleged in the Counterclaim can be established against ELCC because the alleged wrongful communications and other alleged acts related to such communications, even as alleged in the Counterclaim, were related to the Underlying Case (Counterclaim 57, 59, 60 and, Complaint). In pursuing their rights and the Underlying Case, ELCC is entitled to invoke the litigation privilege as an absolute bar to any such claims as a matter of law.

1. **The Litigation Privilege Bars Count 1 for Breaches of Duties of Confidentiality and Loyalty; Count 2 for Tortious Interference; and Count 6 for Defamation.**

The allegations for Counts 1 for Breaches of Duties of Confidentiality and Loyalty, even assuming *arguendo*, that they are true and accurate, state that "Plaintiffs violated their common law duty of confidentiality and loyalty to MDTV by disclosing and/or threatening to disclose MDTV's

6     03-CV-0371 RTB
Memorandum of Points and Authorities Supporting Counter-Defendant ELCC's MSJ

trade secrets, confidential and proprietary information and by soliciting and/or attempting to solicit MDTV's customers and employees..." (SS 1). Count 2 for Tortious Interference arises from Plaintiffs' alleged communications "to induce employees [Patricia Daly] and customers of MDTV [the Plaintiffs themselves] to breach or otherwise terminate their business relationships and contracts with MDTV." (SS 7-8). Count 6 for Defamation only pertains to communications with MDTV's purported customers- the other Plaintiffs, in order to bring this action and the alleged falsity in Plaintiffs' representations (SS 13-14). ELCC is not MDTV's competitor nor did it ever hired or attempt to hire any of MDTV's former employees (SS 5, 6, 11, 12).

Civil Code §47(b) has been repeatedly been found to apply to claims involving alleged breaches of confidence and other similar tort claims. ITT Telecom Products Corp. v. Dooley, 214 Cal.App.3d 307, 322-323 (1989). Dr. Nordan and Mr. Sax's communicating with the other Plaintiffs themselves, and with any MDTV employee regarding the Underlying Case falls squarely within the litigation privilege (SS ). Cal.Civ.Code. §47.

2. **The Litigation Privilege Bars Counts 3 and 4 for Breach of Contract and Breach of Duty of Good Faith and Fair Dealing, Respectively.**

The litigation privilege bars the claims for Breach of Contract and Breach of Duty of Duty of Good Faith and Fair Dealing. Civil Code §47(b) has been repeatedly been found to apply to claims involving alleged breaches of confidence and other similar tort claims. ITT, supra, 214 Cal.App.3d 307, 322-323. The Breach of Contract claim is premised upon a breach of a purported agreement not to "not to compete or to disclose trade secrets and confidential information, as set forth above, using and/or divulging trade secrets and confidential information of MDTV and by conducting and operating business that directly competes with MDTV." (SS 17). The Breach of Duty of Good Faith and Fair Dealing claim simply refers to ELCC's breach of duty of good faith and fair dealing as under the Contract with MDTV (SS 23, 24).

Again, ELCC is not MDTV's competitor and has never hired or attempted to hire any of MDTV's former employees (SS 21-22, 28-29). Further, Dr. Nordan and Mr. Sax's communicating with the other Plaintiffs themselves, and with any MDTV employee regarding the Underlying Case, including the improper markup and charges by MDTV, falls squarely within the litigation privilege

(SS 18, 25). Cal.Civ.Code. §47.

### 3. The Litigation Privilege Bars Count 5 for Conversion.

In ITT, supra, 214 Cal.App.3d 307 answered the question regarding whether the litigation privilege applies to the common law tort claim of misappropriation of trade secrets, and held that it does apply. Id., at 321-323. In ITT, the Court further noted that, in addition to barring the plaintiff's tort claim for misappropriation of trade secrets, Civil Code §47(b) has repeatedly been found to apply to claims involving alleged breaches of confidence, invasion of privacy and other similar tort claims. Id., at 322-323.

As alleged on the Counterclaim, Count 5 for Conversion as against ELCC is based on alleged information purportedly gathered by ELCC and by its counsel, Attorney Sax, in the course of pending or anticipated litigation, including the Underlying Case. (SS 30-33). The only property of MDTV the Counterclaim alleges ELCC has which belongs to MDTV are "trade secrets" purportedly on "electronic records and data recorded on computer disks, databases, videotapes, compact disks and documents." (SS 30-33). All of these matters are encompassed within in Plaintiff's Complaint, including the misleading pricing for MDTV's products and services. (SS 30). Further, ELCC's communicating with the other Plaintiffs regarding the Underlying Case, including misleading pricing for MDTV's services, falls squarely within the litigation privilege (SS 31).

Thus, Count 5 for Conversion, which is based on information allegedly gathered by ELCC for the purposes of litigation, and based on its alleged communications with Plaintiffs and with third parties using such information in the course of preparing and prosecuting this case, are also barred by the litigation privilege.

## C. PARTIAL SUMMARY JUDGMENT IS WARRANTED BECAUSE MDTV HAS NOT ESTABLISHED THE TRADE SECRET RIGHTS AS ALLEGED IN THIS LAWSUIT

MDTV makes scattered references to Plaintiffs' disclosure of trade secrets in counts 1, 3, 4, 5 and 6 for Breach of Duties of Confidentiality and Loyalty; Breach of Contract; Breach of Good Faith and Fair Dealing, and Conversion (See Counterclaim: Breaches of Confidentiality & Loyalty ¶61, Br of K ¶70; Breach of Good Faith and Fair Dealing ¶¶72-73, Conversion ¶¶75-76, Defamation ¶¶78-80 ("conduct of [MDTV's] business"). "'Trade secret' means information, including a formula, pattern,

compilation, program, device, method, technique, or process, that: (1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Cal.Civ.Code. §3426.1(d) [emphasis added].

### 1. MDTV Has Not and Cannot Meet Its Burden of Identifying the Trade Secret with Reasonable Particularity.

"A plaintiff seeking relief for misappropriation of trade secrets 'must identify the trade secrets and carry the burden of showing that they exist.'" Imax Corp. v. Cinema Techs., 152 F.3d 1161, 1165 (9th Cir. 1998). "The plaintiff 'should describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in the trade.'" Id.

Here, although the Counterclaim alleges disclosure or use of trade secrets, MDTV has not and cannot meet its burden of identifying any with reasonable particularity. However, even when asked to identify its trade secrets with reasonable particularity which are the subject of this action, MDTV has failed and refuses to do so. (Rowlett Dec. ¶¶3-6). Thus, partial summary judgment is warranted holding that MDTV has not identified any trade secret with respect to this action.

### D. IF MDTV'S INFORMATION IS DEEMED TO BE A TRADE SECRET, SUMMARY JUDGMENT SHOULD BE GRANTED AS TO THE COUNTS FOR BREACHES OF DUTIES OF CONFIDENTIALITY AND LOYALTY (COUNT 1) AND CONVERSION (COUNT 5) BECAUSE THESE CLAIMS ARE PRE-EMPTED BY CALIFORNIA'S UNIFORM TRADE SECRETS ACT.

Alternatively, if MDTV's information is deemed to be trade secret, its counts for Breaches of Duties of Confidentiality and Loyalty (Count 1) and Conversion (Count 5) are pre-empted by California's Uniform Trade Secrets Act.

As a matter of law and public policy, California's Uniform Trade Secrets Act (sometimes referred to herein as "UTSA") preempts claims for conversion and other claims, including common law claims "based on same nucleus of facts as trade secrets misappropriation claim brought under

UTSA." Digital Envoy, Inc. v. Google, Inc. 370 F.Supp.2d 1025 (N.D.Cal. 2005); Callaway Golf Co. v. Dunlop Slazenger Group Am., 318 F.Supp.2d 216, 219-20 (D. Del. 2004) [under California law, the UTSA preempts common law claims that are based on misappropriation of trade secrets including conversion, unjust enrichment, and negligence]; see also Penalty Kick Management Ltd. v. Coca Cola Co., 318 F.3d 1284, 1297–98 (11th Cir.2003) [holding that claims for conversion, breach of confidential relationship and duty of good faith, unjust enrichment, and quantum meruit are superceded by the Georgia Trade Secrets Act].

In Callaway, the Court granted Callaway's Motion for Summary Judgment on the basis that Dunlop's unjust enrichment, conversion, and negligence claims are preempted by the California Uniform Trade Secrets Act. Callaway, supra, 318 F.Supp.2d 216, 219. "Misappropriation" includes two types of conduct: (1) acquisition, or (2) disclosure or use. Cal. Civ. Code § 3426.1(b); Accuimage Diagnostics Corp. v. Terarecon, Inc., 260 F. Supp. 2d 941, 951 (ND Cal. 2003).

Plaintiffs' alleged disclosure and use of MTDV's trade secrets constitutes the basis counts 1 and 5 for Breach of Duties of Confidentiality and Loyalty and Conversion (SS 34, 37). In Count One for "Breaches of Duties of Confidentiality and Loyalty," MDTV alleges that "Plaintiffs violated their common law duty of confidentiality and loyalty to MDTV by disclosing and/or threatening to disclose MDTV's trade secrets, confidential and proprietary information and by soliciting and/or attempting to solicit MDTV's customers and employees..." (SS 34).

Similarly, Count Five for Conversion is based on MDTV's assertion that the Plaintiffs have converted MDTV's "disks, databases, videotapes, compact disks, and documents, to their own uses." (SS 37). Conversion is comprised of "intentional acts involving substantial interference with its right of possession of its personal property." Callaway, supra, 318 F.Supp.2d 216, 221. As Counts 1 and 5 pertain to the misappropriation of alleged trade secrets, they are preempted by UTSA. Id.

E. **SUMMARY JUDGMENT IS FURTHER WARRANTED BECAUSE MDTV CANNOT SATISFY ITS BURDEN TO PRESENT SUFFICIENT ADMISSIBLE EVIDENCE TO SUPPORT *ANY* OF ITS CLAIMS AGAINST ELCC**

Where the moving party draws attention to the absence of evidentiary support for an essential element of the non-moving party's claim, summary judgment should be granted unless the non-

moving party sets forth substantial facts requiring trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 324-326, 106 S. Ct. 317 (1986). In fact, the Celotex 'showing' can even be made by pointing out through argument, the absence of evidence to support plaintiff's claim. Devereaux v. Abbey, 263 F3d 1070, 1076 (9th Cir. 2001) (en banc). Thus, the moving party can even carry its initial burden on summary judgment by pointing out that the opposing party lacks sufficient evidence to carry its ultimate burden of persuasion at trial. Id. at 325; see also California Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc., 818 F2d 1466, 1468 (9th Cir. 1987).

### 1. MDTV Cannot Establish Count 1 for Breach of Confidentiality and Loyalty Because a Written Contract Exists.

As a matter of law, MDTV cannot establish a cause of action for Breach of Confidentiality and Loyalty, because MDTV claims a written contract exists. Berkla v. Corel Corp., 302 F.3d 909, 918 (9th Cir. 2002). In Berkla, the Ninth Circuit court held that the Plaintiff was precluded from recovering any punitive damages under its Breach of Confidentiality claim since Plaintiff contended it had a written agreement with Defendant. "[T]he tort of breach of confidence is grounded on an implied-in-law or quasi-contractual theory…that is coterminous with his claim for express breach of the NDA claim. California courts have made clear that these two causes of action are mutually exclusive: There cannot be a valid, express contract and an implied contract, each embracing the same subject matter, existing at the same time." Id.

Here, this count is premised upon the same set of facts already set forth in MDTV's breach of contract count: the alleged disclosure of confidential information (SS 38-40). Accordingly, as a matter of law, the first claim for Breach of Confidentiality cannot stand.

### 2. MDTV Cannot Establish Count 2 for Tortious Interference Because It Has Not and Cannot Establish Any Admissible Evidence to Demonstrate Any Interference with Prospective Business by ELCC.

Even if MDTV's claim for tortious interference was not preempted by the UTSA and it was not barred by the litigation privilege (as it is here), this count also fails due to MDTV's lack of evidence to support its claim. The elements for tortious interference with contract are: (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3)

defendant's intentional acts designed to induce a breach of the contractual relationship; (4) actual breach of the contractual relationship; and (5) resulting damage. <u>Pacific Gas & Electric Co. v. Bear Sterns & Co.</u>, 50 Cal.3d 1118, 1126 (1990). Similarly, a claim for interference with prospective economic advantage "must specify some particular, <u>existing</u> business relationship through which plaintiff would have done business but for the allegedly tortious behavior." <u>Roth v. Rhodes</u>, 25 Cal.App.4th 530, 546 (1994) [emphasis added].

As to this cause of action, MDTV alleges that ELCC only spoke with the other Plaintiffs (SS 41 ). The topic of their conversations involved MDTV's pricing, which is a subject matter of the Underlying Case (SS 42). MDTV also claims, astonishingly enough, that MDTV "had a reasonable expectation that these relationships would continue" (Counterclaim ¶65). MDTV alleges that Plaintiffs induced the breach of their own contracts.

First, as a matter of law, a party cannot interfere with its own contract <u>Applied Equipment Corp. v. Litton Saudi Arabia Ltd.</u> (1994) 7 Cal. 4th 503 (a contracting party may not be held liable in tort for conspiring with another to interfere with his own contract). The underlying policy behind this rule is that a plaintiff has a contract damage remedy against the breaching party and should not be permitted to add a claim in tort for conduct that really amounted to nothing more than a breach of contract. <u>Id</u>. Here, MDTV raises a claim for breach of contract against the Plaintiffs (SS 43). In contravention of law, it cannot be allowed to add a claim in tort for conduct that really amounts to nothing more than a breach of contract.

Further, MDTV cannot by any truthful and admissible evidence prove that it "had a reasonable expectation that these relationships [with Plaintiffs] would continue" but for ELCC's interference (Counterclaim ¶65, 68). As evidenced by the contentions in their Complaint, Plaintiffs' contracts with MDTV had ended and MDTV had failed to perform thereunder, which resulted in the breach of contract claims against MDTV (SS 44). Plaintiffs were not satisfied with their commercial relationship with MDTV for a multitude of other reasons than any "inducement" by ELCC (<u>Id</u>).

Moreover, as a matter of law, no liability can be imposed for "inducing" a potentially meritorious lawsuit. <u>Pacific Gas & Electric Co. v. Bear Stearns & Co.</u>, 50 Cal. 3d 1118, 1127 (1990). Thus, there can be no liability for tortious interference by any claim that ELCC caused the

other Plaintiffs to file this action.

As such, MDTV cannot establish that ELCC induced Plaintiffs to breach their contracts with MDTV. Accordingly summary judgment is warranted, or alternatively, partial summary judgment holding that: 1) ELCC did not cause the other Plaintiffs to terminate their business relationship with MDTV; 2) MDTV did not have a reasonable expectation that these relationships with Plaintiffs would continue but for ELCC's inducement to breach; and 3) ELCC did not interfere with its own contract.

3. **Count 3 for Breach of Contract and Count 4 for Breach of the Covenant of Good Faith and Fair Dealing Cannot Stand Because MDTV Has Not Established Any Breach or of Any Confidential Information or Disclosure thereof by ELCC.**

The Breach of Contract claim is premised upon a breach of a purported agreement "not to compete or to disclose trade secrets and confidential information, as set forth above, using and/or divulging trade secrets and confidential information of MDTV and by conducting and operating business that directly competes with MDTV." (Counterclaim ¶70). The Breach of Duty of Good Faith and Fair Dealing claim simply refers to ELCC's breach of duty of good faith and fair dealing as under the Contract with MDTV (Counterclaim ¶73).

First of all, MDTV has not and cannot establish any admissible evidence to demonstrate that ELCC is competing with MDTV. Second, it cannot establish that it gave ELCC any confidential or trade secret information. See Declaration of Hector Gualda ("Gualda Dec.") at ¶7, 8, 13, 14 and 15, Nordan Dec. at ¶23, 24, 26 and 30. Third, it cannot establish ELCC disclosed same. Fourth, it cannot establish any resulting damages from any alleged disclosure. MDTV only claims that ELCC disclosed this information to other who allegedly already had any confidential or trade secret information. Again, no liability can be imposed for "inducing" a potentially meritorious lawsuit. Cal.Civ.Cd. §47; and Pacific Gas & Electric, supra, 50 Cal. 3d 1118, 1127.

Accordingly summary judgment is warranted on these two counts, or alternatively, partial summary judgment holding that: 1) ELCC does not compete with MDTV; 2) ELCC cannot establish that it gave ELCC any confidential or trade secret information; and 3) MDTV has not sustained damages from any purported disclosure of any confidential or trade secret information to others who

allegedly already had such information.

4. **MDTV Has Not and Cannot Establish Any Admissible Evidence to Demonstrate Conversion by ELCC (Count 5), or Any Damages From the Alleged Conversion.**

MDTV cannot prove any claim for conversion against ELCC because "[i]n order to state a claim for conversion, a party must show intentional acts involving substantial interference with its right of possession of its personal property." Callaway Golf, supra, 318 F.Supp.2d 216, 221 [under California law, the UTSA preempts common law claims that are based on misappropriation of trade secrets including conversion, unjust enrichment, and negligence].

MDTV cannot establish that ELCC ever received any property of MDTV (See Dr. Nordan, Dec. ¶32) MDTV cannot and has not provided any admissible evidence that ELCC substantially interfered with MDTV's right of possession to such property.

Moreover, MDTV has not and cannot establish any admissible evidence to demonstrate any damages for conversion (Nordan Dec. at ¶32). MDTV cannot show that ELCC used this purported property. If MDTV is claiming this purported property contained confidential information, the only purported use, if any, would be for the filing of its lawsuit. As a matter of law, any lawsuit filed as a result of that information is privileged, as set forth above. Accordingly, summary judgment is warranted as to the Conversion claim against ELCC.

5. **MDTV Has Not and Cannot Establish Any Defamatory Statements Made by ELCC, or any Damages From the Alleged Defamation.**

The Counterclaim only makes conclusory statements that the "Plaintiffs have intentionally made false representations concerning MDTV and the conduct of business." (Counterclaim ¶79). MDTV has not and cannot establish any defamatory communications by ELCC. And, again, the only alleged communications by ELCC were related to the lawsuit or filing thereof, and thus, are privileged communications as a matter of law. Cal.Civ.Cd. §47.

Moreover, even if the allegations concerning Defamation were true (which they are not), MDTV has not and cannot establish any admissible evidence to demonstrate damages purportedly arising from such alleged statements. Accordingly, summary judgment is warranted as to the Defamation claim against ELCC.

## IV. CONCLUSION

MDTV cannot present any admissible evidence in support of its Counterclaim against ELCC. Moreover, even if MDTV were able to substantiate these claims with admissible evidence, allowing the Counterclaim to stand would violate statutory tenets of public policy by penalizing a party for bringing a justifiable action in contravention of the legislative policy embodied in the litigation privilege. Accordingly, summary judgment should be granted in favor of ELCC on all Counts. Alternatively, as set forth above, partial summary judgment should be sustained to eliminate unnecessary argument and streamline the trial.

DATED: July 23, 2006             LAW OFFICE OF ROBERT D. ROWLETT

By _____
Robert D. Rowlett
Attorneys for Plaintiffs and Counter-defendant
EYE LASER CARE CENTER, LLC