# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MDTV MEDICAL NEWS NOW, INC.<br><br>Defendant/Cross and Third Party Plaintiff,<br>vs.<br>RICHARD L. SAX,<br>Third Party Defendant. | CASE NO. 03CV371-BEN (AJB)<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br>**[Doc. No. 176]** |

Third Party Defendant Richard L. Sax ("Sax") moves for summary judgment on all claims Third Party Plaintiff MDTV Medical News Now, Inc. ("MDTV") asserts against him in its First Amended Third Party Complaint. For the reasons that follow, Sax is entitled to judgment on all claims MDTV asserts against it in its First Amended Third Party Complaint.

## BACKGROUND

This diversity action was initiated by Plaintiffs Eye Laser Care Center, L.L.C., Nevyas Eye Associates and individual doctors--Herbert Nevyas, Michael Mazaheri, Stephen Weinstock, Norman Rappaport, and Warren Cross against MDTV and MDTV's Chief Executive Officer, Paul Argen (collectively "Plaintiffs").[1] Plaintiffs purchased commercial advertising and marketing programs from MDTV. Plaintiffs allege MDTV and Argen misrepresented their services, overcharged Plaintiffs, did not produce their television programs with adequate production

---

[1] On March 11, 2004, on stipulation, the Court dismissed Plaintiffs Herbert Nevyas and Nevyas Eye Associate's claims against MDTV and Argen.

capabilities, did not run their television programs at the appropriate times, did not honor the exclusivity provisions, and refused to refund their money. Sax filed this initial complaint against MDTV and Argen, acting as Plaintiffs' counsel of record.

MDTV and Argen answered and counterclaimed. MDTV also filed a third party complaint against Weinstock Laser Eye Center, Lasik Eye Center, Bellaire Laser Eye Center, Houston Center for Plastic Surgery, and Richard Sax.[2] MDTV later amended its third party complaint to add Hector Gualda as a defendant.[3] MDTV's First Amended Third Party Complaint is the subject of this Order and will be referred to as "Complaint."

In the Complaint, MDTV alleges the following claims against Sax: (1) breach of duties of confidentiality and loyalty; (2) tortious interference with contractual relations and with prospective economic advantage; (3) breach of contract; (4) breach of duty of good faith and fair dealing; (5) conversion; (6) defamation; and (7) misappropriation of trade secret under Cal. Civ. Code § 3426-3426.10.

**STANDARD OF REVIEW/BURDEN OF PROOF ON SUMMARY JUDGMENT**

As noted, Sax is moving for summary judgment on claims asserted against him by MDTV--claims which MDTV would have the burden of proof at trial. Thus, Sax "is not required to produce evidence showing the absence of a genuine issue of material fact with respect to" MDTV's asserted claims. United Steelworkers of America v. Phelps Dodge Corp., 865 F.2d 1539, 1542 (9th Cir. 1989) (citation omitted). Nor is Sax required to "support [his] motion with affidavits or other similar materials negating" MDTV's claims. Id. at 1543. Rather, Sax "need[s] only point to shortfalls in the [MDTV's] case to demonstrate the absence of evidence" supporting its claims. United Steelworkers of America v. Phelps Dodge Corp., 865 F.2d 1539, 1543 (9th Cir.

---

[2] The third party complaint also named Dr. Anita Nevyas-Wallace. But on March 11, 2004, MTDV dismissed its claims against Dr. Anita Nevyas-Wallace.

[3] Gualda, Lasik Eye Center, Bellaire Laser Eye Center, and Houston Center have since been dismissed from the action.

1    1989) (alterations not in original).[4] Sax may do so by simply pointing to the pleadings and arguing
2    that MDTV has failed to establish an element essential to its case. See Celotex Corp. v. Catrett,
3    477 U.S. 317, 323 (1986).

4        To defeat summary judgment, MDTV "must respond with more than mere hearsay and
5    legal conclusions." Orr v. Bank of America, NT & SA, 285 F.3d 764, 783 (9th Cir. 2002) (citation
6    omitted). MDTV also "must do more than simply show that there is some metaphysical doubt as
7    to the material facts[5]." Id. (citation omitted); see also Matsushita Elec. Industrial Co. v. Zenith
8    Radio, 475 U.S. 574, 586 (1986). Rather, MDTV must come forward with sufficient evidence
9    demonstrating to the Court that there are genuine issues of material fact to be decided at trial. Fed.
10   R. Civ. P. 56(e). To do so, MDTV "may not rely merely on the unsupported or conclusory
11   allegations of [its] pleadings." Coverdell v. Department of Social and Health Services, State of
12   Wash., 834 F.2d 758, 769 (9th Cir. 1987) (citations omitted); see also Celotex Corp., 477 U.S. at
13   324. Rather, MDTV must "present affirmative evidence from which a jury might return a verdict
14   in his favor." Phelps Dodge Corp., 865 F.2d at 1542 (citation and internal quotation omitted).
15   And, "a complete failure of proof concerning an essential element of [its] case necessarily renders
16   all other facts immaterial." Celotex Corp., 477 U.S. at 323.

17   **DISCUSSION**

18       Sax has challenged the veracity of MDTV's allegations and claims, and MDTV has offered
19   no evidence or otherwise insufficient evidence to present a jury question. For example, Sax argues

---

22   [4] See also Shawmut Bank, N.A. v. Kress Associates, 33 F.3d 1477, 1497-1498 (9th Cir. 1994) ("[T]he Supreme Court squarely rejected the idea that the party moving for summary judgment must itself produce evidence if it is to show the absence of a genuine issue of material fact. Rather, the Court held, the moving party's burden on summary judgment may be discharged by showing-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." (internal quotations and citation omitted)); Maffei v. Northern Ins. Co. of New York, 12 F.3d 892, 899 (9th Cir. 1993) ("The moving party must show the absence of a genuine issue concerning any material fact, but it need not produce evidence to do so; it may merely point out to the court the absence of evidence." (citation omitted)).

27   [5] "A 'material' fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. The materiality of a fact is thus determined by the substantive law governing the claim or defense." T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

1  MDTV's claims are barred under California[6]'s litigation privilege doctrine[7] as MDTV's claims
2  against him are premised on his communications or conduct in furtherance of filing the complaint
3  against MDTV.

4  "For well over a century, communications with 'some relation' to judicial proceedings
5  have been absolutely immune from tort liability by the privilege codified as section 47(b)." Kimes
6  v. Stone, 84 F.3d 1121, 1126 (9th Cir. 1996) (citation omitted). "[T]he privilege applies to any
7  communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other
8  participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some
9  connection or logical relation to the action." Id. at 1127.

10  "The California courts have applied the privilege quite expansively." Rodriguez v.
11  Panayiotou, 314 F.3d 979, 988 (9th Cir. 2002) (citation omitted); see also Sacramento Brewing
12  Co. v. Desmond, Miller & Desmond, 75 Cal. App. 4th 1082 1089 (1999) (The litigation privilege
13  "should be denied only where [the communication] is so palpably irrelevant to the subject matter
14  of the action that no reasonable person can doubt its irrelevancy." ). "Although originally enacted
15  with reference to defamation, the privilege is now held applicable to any communication, whether
16  or not it amounts to a publication, and all torts except malicious prosecution." Stone, 84 F.3d at
17  1127 (citation omitted). "The privilege protects attorneys, judges, jurors, witnesses, and other
18  court personnel." Id. (citation omitted). "Any doubt as to whether such relationship or connection
19  existed must be resolved in favor of a finding of privilege." Costa v. Superior Court, 157 Cal.
20  App. 3d 673, 678 (1984) (citations omitted).

21  The privilege applies to statements even if made "outside the courtroom and no function of
22  the court or its officers is involved." Panayiotou, 314 F.3d at 988 (citation omitted). "The
23  privilege has also been applied to pre-litigation communications." Id. (citation omitted); see also
24  Hagendorf v. Brown, 699 F.2d 478, 480 (9th Cir. 1983). The privilege is absolute, and is not

---

[6] "In a diversity case, a federal court must follow the substantive law of the state in which it sits." Moore v. Greene, 431 F.2d 584, 589 (9th Cir. 1970) (citation omitted); see also Snead v. Metropolitan Property & Cas. Ins. Co., 237 F.3d 1080, 1090 (9th Cir. 2001).

[7] California's litigation privilege doctrine is codified under California Civil Code § 47(b).

1  affected by malice or other bad motive of the speaker.  See Silberg v. Anderson, 50 Cal.3d 205,
2  216 (1990).  See also Ribas v. Clark, 38 Cal.3d 355, 364 (1985) (tortious nature and purpose of
3  defendant's actions does not negate privilege).

4       Against this backdrop, MDTV's claims do not survive summary judgment.  MDTV
5  believes to the contrary because, it argues, the complaint Sax filed when acting as attorney for the
6  Plaintiffs contained defamatory statements.  Specifically, MDTV points to the certain paragraphs
7  in complaint stated that MDTV's "marketing program and television show was a failure and had
8  not produced new patients or increase revenues that would come close to the amount of fees
9  charges Rapport had paid MDTV" and that "after two years Weinstock had received very few new
10 patients that had heard of [him] from the television show . . . and the show had not produced an
11 increase in revenue that would come close to the amount of fees and charges . . . paid MDTV."
12 (MDTV Opposition at ¶¶ 3 and 4 (alterations in original)).

13      There is, however, no question that the statements in support of the complaint are subject
14 to the litigation privilege.  It is undisputed that Sax was the formal counsel of record for the
15 Plaintiffs in this action and filed the subject complaint against MDTV.  The statements were thus
16 clearly made in a judicial proceeding, by a litigant or litigant's counsel, are directly and logically
17 related to the legal theories against MDTV, and were made in furtherance of the interests of Sax's
18 clients in the litigation.  "An attorney at law is absolutely privileged to publish defamatory matter
19 concerning another in communications preliminary to a proposed judicial proceeding, or in the
20 institution of, or during the course and as a part of, a judicial proceeding in which he participates
21 as counsel, if it has some relation to the proceeding. " Financial Corp. of America v. Wilburn, 189
22 Cal. App. 3d 764, 773 (1987) (citations and internal quotation omitted).  See also Rosenthal v. Irell
23 & Manella, 135 Cal. App. 3d 121, 128 (1982) (attorney's false statements to plaintiff's insurance
24 company are privileged where purpose of communication was to settle underlying litigation
25 between his client and plaintiff); Kim v. Walker, 208 Cal. App. 3d 375, 383 (1989) (attorney's
26 statement during judicial proceeding that plaintiff was a child molester was privileged); Williams
27 v. Taylor, 129 Cal. App. 3d 745, 752-753 (1982) (defendant's statement that plaintiff was a thief
28 was privileged).  Further, "communications made in connection with litigation do not necessarily

1  fall outside the privilege merely because they are, or are alleged to be, fraudulent, perjurious,
2  unethical, or even illegal . . . ." Blanchard v. DirecTV, 123 Cal. App. 4th 903, 921 (2004) (citation
3  and internal quotations omitted).

4       MDTV also appears to argue that there is a triable issue of fact as to Sax's
5  misappropriation of MDTV's trade secrets, i.e., its customer list.  Specifically, MDTV claims that
6  "subsequent to the filing of the instant suit an anonymous letter was circulated to MDTV's
7  proprietary customer database informing each MDTV customer of the lawsuit with a suggestion to
8  contact attorney Sax to recoup perceived losses." (MDTV Opposition at 9 ¶ 6).  There is no
9  evidence that suggests Sax was responsible for this "anonymous letter."  Moreover, the alleged
10  communication appears to have been in the course of a an investigation or preparation of an on
11  going lawsuit and consequently protected.  See Cayley v. Nunn, 235 Cal. Rptr. 385, 387-88 (1987)
12  ("The privilege embraces preliminary conversations attendant upon such proceeding so long as
13  they are in some way related to or connected to the pending or contemplated actions").  See also
14  ITT Telecom Products Corp. v. Dooley, 214 Cal. App. 3d 307 (1989).

15       Equally without merit is MDTV's contention that Sax somehow waived the privilege.
16  "California courts will find waiver when a party intentionally relinquishes a right or when that
17  party's acts are so inconsistent with an intent to enforce the right as to induce a reasonable belief
18  that such right has been relinquished."  Old Republic Ins. Co. v. FSR Brokerage, Inc., 80 Cal. App.
19  4th 666, 678 (2000) (citations and internal quotations omitted).  "The burden . . . is on the party
20  claiming a waiver of a right to prove it by clear and convincing evidence that does not leave the
21  matter to speculation, and doubtful cases will be decided against a waiver."  Id. (citations and
22  internal quotations omitted).  Simply put, MDTV has failed to show Sax waived his, or his
23  clients', litigation privilege defense.

24       MDTV argues Sax waived any and all privileges for himself and his clients during a
25  hearing before the Court in March 2004.  The transcript of that hearing, however, does not even
26  mention or discuss litigation privilege, much less provide a "clear expression" of Sax's intent to
27  waive such right or that his conduct warrants the inference that Sax has relinquished that right.
28  See Davies v. Grossmont Union High School Dist., 930 F.2d 1390, 1395 (9th Cir. 1991).

## CONCLUSION

MDTV has failed to create a triable issue of fact on its claims against Sax. Summary judgment is required "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322. Accordingly, Sax is entitled to judgment on all claims MDTV asserts against him in its First Amended Third Party Complaint.

**SO ORDERED**.

DATED: January 17, 2007

_____
Hon. Roger T. Benitez
United States District Judge