# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EYE LASER CARE CENTER, LLC<br><br>　　　　Plaintiff/Counter Defendant,<br>vs.<br><br>MDTV MEDICAL NEWS NOW Inc., PAUL ARGEN<br><br>　　　　Defendants/Counterclaimants. | CASE NO. 03CV371-BEN (AJB)<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br>**[Doc. No. 183]** |

Plaintiff/Counter Defendant Eye Laser Care Center LLC ("Eye Laser") moves for summary judgment on all claims Defendants/Counterclaimants MDTV Medical News Now, Inc. ("MDTV") and Paul Argen ("Argen") (collectively "Counterclaimants") assert against it. For the reasons that follow, Eye Laser is entitled to judgment.

## BACKGROUND

This diversity action was initiated by Plaintiffs Eye Laser, Nevyas Eye Associates and individual doctors--Herbert Nevyas, Michael Mazaheri, Stephen Weinstock, Norman Rappaport, and Warren Cross against MDTV and MDTV's Chief Executive Officer, Argen (collectively "Plaintiffs").[1] Plaintiffs purchased commercial advertising and marketing programs from MDTV. Plaintiffs allege MDTV and Argen misrepresented their services, overcharged Plaintiffs, did not

---

[1] On March 11, 2004, on stipulation, the Court dismissed Plaintiffs Herbert Nevyas and Nevyas Eye Associate's claims against MDTV and Argen.

produce their television programs with adequate production capabilities, did not run their television programs at the appropriate times, did not honor the exclusivity provisions, and refused to refund their money.

MDTV and Argen answered and asserted the following counterclaims against Eye Laser[2]: (1) breach of duties of confidentiality and loyalty; (2) tortious interference with contractual relations and with prospective economic advantage; (3) breach of contract; (4) breach of duty of good faith and fair dealing; (5) conversion; and (6) defamation.

MDTV and Argen make no specific allegations against, or attribute specific conduct to, Eye Laser as a separate entity. Their claims instead appear to be based on conduct or statements attributed to Eye Laser's owner, Dr. Lee T. Nordan ("Nordan"), and Eye Laser's attorney Richard Sax ("Sax"). Specifically, the Counterclaimants allege "Sax, a business partner in Dr. Nordan's practice, who was involved in negotiating the terms of Dr. Nordan's contract with MDTV, contacted . . . Argen . . ., and threatened . . . Argen with a baseless Class Action law suit if MDTV did not pay Sax over $100,000.00 as compensation for alleged losses in his business with Dr. Nordan resulting from contracted advertising that allegedly did not produce satisfactory results." (Defendants' Answer and Counterclaim ¶ 57). The Counterclaimants further allege Dr. Weinstock "colluded" with Plaintiffs in this action, including Dr. Nordan "and/or shared trade secrets belonging to MDTV with each other, individually or jointly, informing each of the actual costs associated with MDTV's business plans and operations, including costs of purchasing cable television time, the sources thereof, and costs associated with producing advertising associated with contracts belonging to MDTV." (Id. ¶ 59).

**STANDARD OF REVIEW/BURDEN OF PROOF ON SUMMARY JUDGMENT**

As noted, Eye Laser is moving for summary judgment on counterclaims asserted against it by MDTV and Argen--claims which MDTV and Argen would have the burden of proof at trial. Thus, Eye Laser "is not required to produce evidence showing the absence of a genuine issue of material fact with respect to" the asserted counterclaims. United Steelworkers of America v.

---

[2] MDTV and Argen also asserted counterclaims against other Plaintiffs, but only the claims against Eye Laser are addressed in this Order.

1  Phelps Dodge Corp., 865 F.2d 1539, 1542 (9th Cir. 1989) (citation omitted).  Nor is Eye Laser

2  required to "support [its] motion with affidavits or other similar materials negating" the

3  counterclaims.  Id. at 1543.  Rather, Eye Laser "need[s] only point to shortfalls in the

4  [Counterclaimants'] case to demonstrate the absence of evidence" supporting their counterclaims.

5  United Steelworkers of America v. Phelps Dodge Corp., 865 F.2d 1539, 1543 (9th Cir. 1989)

6  (alterations not in original).[3]  Eye Laser may do this by simply pointing to the pleadings and

7  arguing that Counterclaimants have failed to establish an element essential to their case.  See

8  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

9        To defeat summary judgment, MDTV and Argen "must respond with more than mere

10 hearsay and legal conclusions."  Orr v. Bank of America, NT & SA, 285 F.3d 764, 783 (9th Cir.

11 2002) (citation omitted).  MDTV and Argen also "must do more than simply show that there is

12 some metaphysical doubt as to the material facts[4]."  Id. (citation omitted); see also Matsushita

13 Elec. Industrial Co. v. Zenith Radio, 475 U.S. 574, 586 (1986).  Rather, MDTV and Argen must

14 come forward with sufficient evidence demonstrating to the Court that there are genuine issues of

15 material fact to be decided at trial.  Fed. R. Civ. P. 56(e).  To do so, MDTV and Argen "may not

16 rely merely on the unsupported or conclusory allegations of [its] pleadings."  Coverdell v.

17 Department of Social and Health Services, State of Wash., 834 F.2d 758, 769 (9th Cir. 1987)

18 (citations omitted); see also Celotex Corp., 477 U.S. at 324.  That is the Counterclaimants "may

19 not rest upon the mere allegations or denials of [their] pleadings", but must respond "by affidavits

20 or . . . must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P.

---

[3] See also Shawmut Bank, N.A. v. Kress Associates, 33 F.3d 1477, 1497-1498 (9th Cir. 1994) ("[T]he Supreme Court squarely rejected the idea that the party moving for summary judgment must itself produce evidence if it is to show the absence of a genuine issue of material fact.  Rather, the Court held, the moving party's burden on summary judgment may be discharged by showing-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." (internal quotations and citation omitted)); Maffei v. Northern Ins. Co. of New York, 12 F.3d 892, 899 (9th Cir. 1993) ("The moving party must show the absence of a genuine issue concerning any material fact, but it need not produce evidence to do so; it may merely point out to the court the absence of evidence." (citation omitted)).

[4] "A 'material' fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit.  The materiality of a fact is thus determined by the substantive law governing the claim or defense."  T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

1  56(e); Celotex Corp., 477 U.S. at 324.  Put differently, the Counterclaimants must "present

2  affirmative evidence from which a jury might return a verdict in [their] favor."  Phelps Dodge

3  Corp., 865 F.2d at 1542 (citation and internal quotation omitted).  And, "a complete failure of

4  proof concerning an essential element of [their] case necessarily renders all other facts

5  immaterial."  Celotex Corp., 477 U.S. at 323.

## DISCUSSION

7  Eye Laser has challenged the veracity of the counterclaims asserted against it, and MDTV

8  and Argen have neither submitted evidence nor otherwise controverted Eye Laser's supporting

9  evidence to present a jury question.  For example, Eye Laser argues the counterclaims are barred

10  under California[5]'s litigation privilege doctrine[6] to the extent they are premised on

11  communications or conduct in furtherance of filing the complaint in this case against MDTV and

12  Argen.  The Court agrees.

13  "For well over a century, communications with 'some relation' to judicial proceedings

14  have been absolutely immune from tort liability by the privilege codified as section 47(b)."  Kimes

15  v. Stone, 84 F.3d 1121, 1126 (9th Cir. 1996 ) (citation omitted).  "[T]he privilege applies to any

16  communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other

17  participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some

18  connection or logical relation to the action."  Id. at 1127.

19  "The California courts have applied the privilege quite expansively."  Rodriguez v.

20  Panayiotou, 314 F.3d 979, 988 (9th Cir. 2002) (citation omitted); see also Sacramento Brewing

21  Co. v. Desmond, Miller & Desmond, 75 Cal. App. 4th 1082 1089 (1999) (The litigation privilege

22  "should be denied only where [the communication] is so palpably irrelevant to the subject matter

23  of the action that no reasonable person can doubt its irrelevancy." ).  "Although originally enacted

24  with reference to defamation, the privilege is now held applicable to any communication, whether

---

[5] "In a diversity case, a federal court must follow the substantive law of the state in which it sits."  Moore v. Greene, 431 F.2d 584, 589 (9th Cir. 1970) (citation omitted); see also Snead v. Metropolitan Property & Cas. Ins. Co., 237 F.3d 1080, 1090 (9th Cir. 2001).

[6] California's litigation privilege doctrine is codified under California Civil Code § 47(b).

or not it amounts to a publication, and all torts except malicious prosecution." Stone, 84 F.3d at 1127 (citation omitted). That is the only tort cause of action which can be based upon the initiation of a lawsuit (or communicative acts related to the lawsuit) is that of malicious prosecution." Ludwig v. Superior Court, 37 Cal. App. 4th 8, 24 (1995). "The privilege protects attorneys, judges, jurors, witnesses, and other court personnel." Id. (citation omitted). "Any doubt as to whether such relationship or connection existed must be resolved in favor of a finding of privilege." Costa v. Superior Court, 157 Cal. App. 3d 673, 678 (1984) (citations omitted).

The privilege applies to statements even if made "outside the courtroom and no function of the court or its officers is involved." Panayiotou, 314 F.3d at 988 (citation omitted). "The privilege has also been applied to pre-litigation communications." Id. (citation omitted); see also Hagendorf v. Brown, 699 F.2d 478, 480 (9th Cir. 1983). Accordingly, "California courts have ruled explicitly that the privilege extends to preliminary communications such as demand letters from attorneys . . . [and that] [f]iling suit before the publication is not required." Brown, 699 F.2d at 480 (citations omitted). "The litigation privilege is absolute; it applies, if at all, regardless whether the communication was made with malice or the intent to harm. Put another way, application of the privilege does not depend on the publisher's motives, morals, ethics or intent." American Products Co., Inc. v. Law Offices of Geller, Stewart & Foley, LLP, 134 Cal. App. 4th 1332, 1342 (2005) (internal quotations omitted).

Here, even if the Counterclaimants' allegations against Eye Laser are true, they are primarily based on communications or actions that were preparatory to or in anticipation of bringing of the original action against MDTV and Argen, and thus barred under the litigation privilege doctrine. As noted, the Counterclaimants allege "Sax, a business partner in Dr. Nordan's practice, who was involved in negotiating the terms of Dr. Nordan's contract with MDTV, contacted . . . Argen . . ., and threatened . . . Argen with a baseless Class Action law suit if MDTV did not pay Sax over $100,000.00 as compensation for alleged losses in his business with Dr. Nordan resulting from contracted advertising that allegedly did not produce satisfactory results." (Defendants' Answer and Counterclaim ¶ 57). The Counterclaimants further allege Dr. Weinstock "colluded" with Plaintiffs in this action, including Dr. Nordan "and/or shared trade secrets

1  belonging to MDTV with each other, individually or jointly, informing each of the actual costs
2  associated with MDTV's business plans and operations, including costs of purchasing cable
3  television time, the sources thereof, and costs associated with producing advertising associated
4  with contracts belonging to MDTV." (Id. ¶ 59).

5     The litigation privilege, however, includes statements concerning litigation threatened in
6  the event a demand is not met. See Aronson v. Kinsella, 58 Cal. App. 4th 254, 260-261 (1997);
7  see also American Products Co., Inc., 134 Cal. App. 4th at 1341("The privilege has been broadly
8  applied to demand letters and other prelitigation communications by attorneys."); Lerette v. Dean
9  Witter Organization, Inc., 60 Cal. App. 3d 573, 577 (1976) (settlement demand letter was fully
10 privileged as preliminary to a judicial proceeding).  Thus, any alleged unlawful demands fall
11 within the ambit of the litigation privilege because they were part of a judicial proceeding (the
12 initial lawsuit against MDTV and Argen) and were made to achieve an object of the litigation.
13 The privilege also encompasses statements made to third parties who have a substantial interest in
14 the outcome of the litigation. Costa v. Superior Court, 157 Cal. App. 3d 673, 678 (1984).
15 Therefore, "the privilege has been applied to publications which were private communications
16 between parties and which communications were related not only to actual but potential court
17 actions." Chen v. Fleming, 147 Cal. App. 3d 36, 41 (1983) (citation omitted).  Accordingly,
18 counterclaims are barred under the litigation privilege doctrine.

19     The Counterclaimants first argue their defamation claim should survive, because of certain
20 paragraphs in the complaint filed against them. Specifically they allege the complaint stated that
21 MDTV's "marketing program and television show was a failure and had not produced new
22 patients or increase revenues that would come close to the amount of fees charges Rapport had
23 paid MDTV" and that "after two years Weinstock had received very few new patients that had
24 heard of [him] from the television show . . . and the show had not produced an increase in revenue
25 that would come close to the amount of fees and charges . . . paid MDTV." (Counterclaimants'
26 Opposition at ¶¶ 3 and 4 (alterations in original)).

27     There is, however, no question that the statements in support of the complaint are subject
28 to the litigation privilege. It "cannot be disputed that the filing of a lawsuit is a publication in the

1  course of a judicial proceeding." Abraham v. Lancaster Community Hospital, 217 Cal. App. 3d
2  796, 822 (1990) (citation and internal quotations and alterations removed).  The statements were
3  thus clearly made in a judicial proceeding, by a litigant or litigant's counsel who had substantial
4  interest in the outcome of the litigation, and are directly and logically related to the legal theories
5  against the Counterclaimants.  Further, "communications made in connection with litigation do not
6  necessarily fall outside the privilege merely because they are, or are alleged to be, fraudulent,
7  perjurious, unethical, or even illegal . . . ." Blanchard v. DirecTV, 123 Cal. App. 4th 903, 921
8  (2004) (citation and internal quotations omitted).

9  The Counterclaimants next argue that Eye Laser somehow waived the privilege.
10 "California courts will find waiver when a party intentionally relinquishes a right or when that
11 party's acts are so inconsistent with an intent to enforce the right as to induce a reasonable belief
12 that such right has been relinquished." Old Republic Ins. Co. v. FSR Brokerage, Inc., 80 Cal. App.
13 4th 666, 678 (2000) (citations and internal quotations omitted).  "The burden . . . is on the party
14 claiming a waiver of a right to prove it by clear and convincing evidence that does not leave the
15 matter to speculation, and doubtful cases will be decided against a waiver." Id. (citations and
16 internal quotations omitted).  Simply put, MDTV has failed to show waiver.

17 MDTV argues Eye Laser's attorney, Sax, waived any and all privileges for his clients
18 during a hearing before the Court in March 2004.  The transcript of that hearing, however, does
19 not even mention or discuss litigation privilege, much less provide a "clear expression" of any
20 party's intent to waive such right or that his conduct warrants the inference that Eye Laser has
21 relinquished that right.  See Davies v. Grossmont Union High School Dist., 930 F.2d 1390, 1395
22 (9th Cir. 1991).

23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

## **CONCLUSION**

The Counterclaimants have failed to create a triable issue of fact on their counterclaims against Eye Laser, and thus have failed to sustain their burden in opposing Eye Laser's summary judgment motion. Summary judgment is required "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp.</u>, 477 U.S. at 322. Accordingly, Eye Laser is entitled to judgment on all counterclaims asserted against it.

**SO ORDERED**.

DATED: January 22, 2007

_____
Hon. Roger T. Benitez
United States District Judge