UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MDTV MEDICAL NEWS, INC. and PAUL ARGEN,<br><br>          Defendants/Third Party Plaintiff,<br><br>vs.<br><br>STEPHEN WEINSTOCK, M.D. and WEINSTOCK LASER EYE CENTER<br><br>          Plaintiff/Third Party Defendant. | CASE NO. 03CV371-BEN (AJB)<br><br>**ORDER RE MOTION FOR SUMMARY JUDGMENT [Doc. No. 191]** |

Plaintiff /Counter Defendant Stephen Weinstock, M.D. ("Weinstock") and Third Party Defendant Weinstock Laser Eye Center ("WLEC") (collectively "Defendants") move for summary judgment on all counts Defendant/Counter Claimant and Third Party Plaintiff MDTV Medical News Now, Inc. ("MDTV") and Defendant/Counter Claimant Paul Argen ("Argen") (collectively "Plaintiffs") assert against them. For the reasons that follow, Defendants' Motion is **GRANTED** in part and **DENIED** in part.

### **BACKGROUND**

This diversity action was initiated by Plaintiffs Eye Laser, Nevyas Eye Associates and individual doctors--Herbert Nevyas, Michael Mazaheri, Stephen Weinstock, Norman Rappaport, and Warren Cross against MDTV and MDTV's Chief Executive Officer, Argen.[1]  Plaintiffs

---

[1] On March 11, 2004, on stipulation, the Court dismissed Plaintiffs Herbert Nevyas and Nevyas Eye Associate's claims against MDTV and Argen.

purchased commercial advertising and marketing programs from MDTV. Plaintiffs allege MDTV and Argen misrepresented their services, overcharged Plaintiffs, did not produce their television programs with adequate production capabilities, did not run their television programs at the appropriate times, did not honor the exclusivity provisions, and refused to refund their money.

MDTV and Argen answered and asserted the following counterclaims against Weinstock[2]: (1) breach of duties of confidentiality and loyalty; (2) tortious interference with contractual relations and with prospective economic advantage; (3) breach of contract; (4) breach of duty of good faith and fair dealing; (5) conversion; and (6) defamation.

MDTV also filed a Third Party Complaint against WLEC, which it later amended.[3] In its First Amended Third Party Complaint, MDTV asserts against WLEC the same six counts it counterclaims against Weinstock, along with a seventh cause of action for misappropriation of trade secret under Cal. Civ. Code §§ 3426-3426.10.

**STANDARD OF REVIEW/BURDEN OF PROOF ON SUMMARY JUDGMENT**

As noted, Weinstock and WLEC are moving for summary judgment on claims or counterclaims asserted against them by MDTV and Argen--claims which MDTV and Argen would have the burden of proof at trial. Thus, Weinstock and WLEC are "not required to produce evidence showing the absence of a genuine issue of material fact with respect to" to the asserted claims. United Steelworkers of America v. Phelps Dodge Corp., 865 F.2d 1539, 1542 (9th Cir. 1989) (citation omitted). Nor are they required to "support [their] motion with affidavits or other similar materials negating" the claims. Id. at 1543. Rather, Weinstock and WLEC "need only point to shortfalls in the [Plaintiffs'] case to demonstrate the absence of evidence" supporting its claims. United Steelworkers of America v. Phelps Dodge Corp., 865 F.2d 1539, 1543 (9th Cir.

---

[2] MDTV and Argen also asserted counterclaims against other Plaintiffs, but only the claims against Weinstock are addressed in this Order.

[3] MDTV's Third Party Complaint also asserted claims against other Third Party Defendants, but only the claims against WLEC are addressed in this Order.

1989) (alterations not in original).[4] Defendants may do so by simply pointing to the pleadings and arguing that Plaintiffs have failed to establish an element essential to their case. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also id. ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." (internal quotations and citations omitted)). See also Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996) ("The function of summary judgment is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." (citation and internal quotations omitted).

To defeat summary judgment, MDTV and Argen "must respond with more than mere hearsay and legal conclusions." Orr v. Bank of America, NT & SA, 285 F.3d 764, 783 (9th Cir. 2002) (citation omitted). MDTV and Argen also "must do more than simply show that there is some metaphysical doubt as to the material facts[5]." Id. (citation omitted); see also Matsushita Elec. Industrial Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). Rather, they must come forward with sufficient evidence demonstrating to the Court that there are genuine issues of material fact to be decided at trial. Fed. R. Civ. P. 56(e). To do so, MDTV and Argen "may not rely merely on the unsupported or conclusory allegations of [their] pleadings." Coverdell v. Department of Social and Health Services, State of Wash., 834 F.2d 758, 769 (9th Cir. 1987) (citations omitted); see also Celotex Corp., 477 U.S. at 324. MDTV and Argen instead must "present affirmative

---

[4] See also Shawmut Bank, N.A. v. Kress Associates, 33 F.3d 1477, 1497-1498 (9th Cir. 1994) ("[T]he Supreme Court squarely rejected the idea that the party moving for summary judgment must itself produce evidence if it is to show the absence of a genuine issue of material fact. Rather, the Court held, the moving party's burden on summary judgment may be discharged by showing-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." (internal quotations and citation omitted)); Maffei v. Northern Ins. Co. of New York, 12 F.3d 892, 899 (9th Cir. 1993) ("The moving party must show the absence of a genuine issue concerning any material fact, but it need not produce evidence to do so; it may merely point out to the court the absence of evidence." (citation omitted)).

[5] "A 'material' fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. The materiality of a fact is thus determined by the substantive law governing the claim or defense." T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

evidence from which a jury might return a verdict in his favor." Phelps Dodge Corp., 865 F.2d at 1542 (citation and internal quotation omitted). And, "a complete failure of proof concerning an essential element of [their] case necessarily renders all other facts immaterial." Celotex Corp., 477 U.S. at 323.

## DISCUSSION

**I.     Preemption Under California Uniform Trade Secrets Act, Cal. Civ. Code §§ 3426.1 *et seq*.**

Weinstock and WLEC first argue they are entitled to judgment on Count I (breach of duties of confidentiality and loyalty), Count II (tortious interference), Count V (conversion), and Count VI (defamation) because they are based on allegations of misappropriation of trade secrets and thus preempted by California Uniform Trade Secrets Act, Cal. Civ. Code §§ 3426.1 *et seq*. ("CUTSA").[6]

"[A] common law cause of action based upon allegations of trade secret misappropriation is preempted by the Uniform Trade Secrets Act." Embedded Internet Solutions, Inc., 403 F. Supp. 2d 968, 978 (N.D. Cal. 2005); see also Digital Envoy, Inc. v. Google, Inc., 370 F. Supp. 2d 1025, 1035 (N.D. Cal. 2005); Accuimage Diagnostics Corp. v. Terarecon, Inc., 260 F. Supp. 2d 941, 954 (N.D. Cal. 2003) (holding that plaintiff's common law claim for misappropriation of trade secrets was preempted by the UTSA); Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc., 318 F. Supp. 2d 216, 219-220 (D. Del. 2004) (concluding that, under California law, UTSA preempts common law claims that are based on misappropriation of trade secrets).

MDTV's alleged trade secret is its customer list. See ReadyLink Healthcare v. Cotton, 126 Cal. App. 4th 1006, 1019 (2005) ("[A] customer list procured by substantial time, effort, and expense is a protectable trade secret." (citation omitted)); ABBA Rubber Co. v. Seaquist, 235 Cal. App. 3d 1, 18 (1991) ("A customer list is one of the types of information which can qualify as a trade secret"). And, the nucleus of facts supporting Counts I (breach of duties of confidentiality and loyalty) and V (conversion) are based on misappropriation of MDTV's customer list. In

---

[6] "In a diversity case, a federal court must follow the substantive law of the state in which it sits." Moore v. Greene, 431 F.2d 584, 589 (9th Cir. 1970) (citation omitted); see also Snead v. Metropolitan Property & Cas. Ins. Co., 237 F.3d 1080, 1090 (9th Cir. 2001).

1  support of Count I (breach of duties of confidentiality and loyalty), MDTV alleges Defendants
2  "violated their common law duty of confidentiality and loyalty to MDTV, by disclosing and/or
3  threatening to disclose MDTV's trade secrets, confidential and proprietary information, and by
4  soliciting and/or attempting to solicit MDTV's customers, contacts and employees, and by
5  otherwise engaging in conduct that is adverse to MDTV's interest."  This allegation is
6  incorporated by reference into MDTV's conversion claim which is largely based on wrongful
7  misappropriation of MDTV's customer's list.  Thus, even if a jury determined MDTV's customer
8  lists were in fact trade secrets, the UTSA would preempt a claim of conversion of those secrets
9  because the claim is supported only by the facts supporting misappropriation.  Callaway Golf, 318
10 F. Supp. 2d at 219-220.  Accordingly, under the UTSA, Counts I (breach of duties of
11 confidentiality and loyalty) and V (conversion) are preempted.
12     Counts II (tortious interference) and VI (defamation), on the other hand, are not entirely or
13 substantially based on misappropriation of MDTV's customer list.  Rather, MDTV's tortious
14 interference claim appears to be based on Defendants' alleged interference with MDTV's business
15 relationships with existing and potential customers, while its defamation claim is based on
16 Defendants' conduct which allegedly was calculated to injure MDTV's reputation.  Accordingly,
17 Defendants' Motion for judgment on Counts II and VI is denied on this basis.
18 **II.    Tortious Interference With Contractual Relations and Prospective Economic**
19         **Advantage (Count II)**
20     "The elements of a cause of action for intentional interference with contract are: (1) a valid
21 contract between plaintiff and a third party; (2) defendants' knowledge of the contract; (3)
22 defendants' intentional acts designed to induce a breach or disruption of the contractual
23 relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting
24 damage." Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist., 106 Cal.
25 App. 4th 1219, 1239 (2003) (citations omitted).  A claim for interference with prospective
26 economic advantage likewise requires "some existing business relationship through which plaintiff
27 would have done business but for the allegedly tortious behavior." Roth v. Rhodes, 25 Cal. App.
28 4th 530, 546 (1994).  See also Tuchscher Development Enterprises, Inc., 106 Cal. App. 4th at 1242

("To prevail on the interference with prospective economic advantage causes of action, TDE has the burden of proving not only that respondents knowingly or negligently interfered with an economic relationship, but that they engaged in conduct that was wrongful by some legal measure other than the fact of interference itself.").

Defendants argue that Plaintiffs' claim as stated in Count II is based on "hypothetical relationships" and that any claim that they have "been deprived of the economic benefits of 'potential customers' is not based on a definite relationship with a particular party, but on [their] hope that [they] may, at some point in the future, realize economic benefits from unidentified customers." Moreover, Defendants ague, MDTV and Argen have not offered, and cannot offer, any evidence to show resulting damage from the alleged tortious activities. In Opposition to Defendants' Motion, MDTV and Argen do not address any of the required elements of their cause of action, much less point to any competent admissible evidence which substantiate the elements of their claims. As MDTV and Argen have failed to create a triable issue of fact as to any of the required elements, Defendants are entitled to judgment on Count II.

**III.    Breach of Contract and Breach of Covenant of Good Faith and Fair Dealing (Count III and Count IV)**

WLEC argues it is entitled summary judgment Counts III and IV of MDTV's First Amended Third Party Complaint because "no contract has ever existed between WLEC and MDTV."[7]

One essential element of a breach of contract action is the existence of a contract. See Careau & Co. v. Sec. Pac. Bus. Credit, Inc., 222 Cal. App. 3d 1371, 1388 (1990). MDTV has offered no evidence showing that it had a contract with WLEC, and thus has failed to rebut WLEC's contention that no contract existed between it and MDTV. Further, because there is no breach of contract, the cause of action for breach of the covenant of good faith and fair dealing must fail as well. See Guz v. Bechtel Nat. Inc., 24 Cal.4th 317, 349-350 (2000); see also Los Angeles Equestrian Center, Inc. v. City of Los Angeles, 17 Cal. App. 4th 432, 447 (1993) ("The implied covenant of good faith and fair dealing rests upon the existence of some specific

---

[7] Weinstock does not argue that he is entitled to summary judgment on this claim.

1  contractual obligation." (citation omitted)).  Accordingly, WLEC has established that MDTV can

2  not maintain a cause of action for breach of contract or breach of the implied covenant of good

3  faith and fair dealing against it, and is entitled to judgment on Counts III and IV.

4  **IV.    Conversion (Count V)**

5  WLEC[8] argues it is entitled to judgment on MDTV's conversion cause of action because

6  MDTV cannot provide any evidence showing that WLEC "received any of the alleged trade secret

7  information" that forms the basis of the conversion claim, or that WLEC "substantially interfered

8  with MDTV's right of possession to such information."  Moreover, WLEC argues, MDTV "cannot

9  establish any admissible evidence to demonstrate any damages for conversion."

10  "Conversion is any act of dominion wrongfully exerted over another's personal property in

11  denial of or inconsistent with his rights therein."  Fischer v. Machado, 50 Cal. App.4th 1069, 1072

12  (1996) (quoting Weiss v. Marcus, 51 Cal. App. 3d 590, 599 (1975)).  "To establish conversion,

13  plaintiff must establish an actual interference with his ownership or right of possession . . . ."  Id.

14  (emphasis removed).  Damages is also an essential element of the cause of action for conversion.

15  See Burlesci v. Petersen, 68 Cal. App. 4th 1062, 1065 (1998).

16  In the face of WLEC's challenge, MDTV has offered no evidence establishing the

17  elements essential to maintaining a cause of action for conversion, including damages.  Therefore,

18  WLEC is entitled to summary judgment on Count V.

19  **V.     Defamation (Count VI)**

20  WLEC argues[9] MDTV cannot establish a defamation cause of action because MDTV

21  "cannot establish any defamatory communications by WLEC . . . and cannot establish any

22  admissible evidence to demonstrate damages . . . ."  To sustain a cause of action for defamation,

23  MDTV is required to point to facts supported by evidence that, if proven, would support all of the

24  elements of a cause of action for defamation: namely, that written or oral communications were

25  made, that they were false, that they were not protected by any privilege and that they resulted in

26  an injury to reputation.  Cal. Civ. Code §§ 44, 45; Shively v. Bozanich, 31 Cal.4th 1230, 1242

27

28  [8] Weinstock does not argue that he is entitled to summary judgment on this claim.

[9] Weinstock does not argue that he is entitled to summary judgment on this claim.

1  (2003). MDTV has failed to even attempt, much less make a showing that WLEC make any false
2  written or oral communications regarding MDTV. Nor has MDTV shown any damage to its
3  reputation resulting from any conduct on the part of MDTV. Accordingly, WLEC is entitled to
4  judgment to Count VI as a matter of law.

5  **VI.   Misappropriation of Trade Secrets Under Cal. Civ. Code.§§ 3426-3426.10 (Count
6  VII)**

7  WLEC argues[10] summary judgment is warranted as to Count VII because MDTV cannot
8  show that its customer information is secret, cannot show damages, and cannot meet its burden of
9  identifying the trade secret with reasonable particularity. To state a cause of action for
10 misappropriation of trade secrets under the UTSA, a plaintiff must prove: (1) the existence of a
11 trade secret, and (2) misappropriation of the trade secret. See Cal. Civ. Code § 3426.1(b). A trade
12 secret is misappropriated if a person (1) acquires a trade secret knowing or having reason to know
13 that the trade secret has been acquired by "improper means," (2) discloses or uses a trade secret the
14 person has acquired by "improper means" or in violation of a nondisclosure obligation, (3)
15 discloses or uses a trade secret the person knew or should have known was derived from another
16 who had acquired it by improper means or who had a nondisclosure obligation or (4) discloses or
17 uses a trade secret after learning that it is a trade secret. Id.

18 Here, even if MDTV's customer list deserves trade secret protection, MDTV has failed to
19 prove how Defendant WLEC "misappropriated" the trade secrets. Under the UTSA, the term
20 "misappropriation" is defined to include the nonconsensual "[d]isclosure or use of a trade secret."
21 MDTV has provided no evidence suggesting WLEC misappropriated its trade secrets, i.e.,
22 customer lists. That is there is no evidence suggesting that WLEC improperly disclosed a trade
23 secret to a third party. "[T]o prove misappropriation of a trade secret under the UTSA, a plaintiff
24 must establish (among other things) that the defendant improperly 'used' the plaintiff's trade
25 secret." Sargent Fletcher, Inc. v. Able Corp., 110 Cal. App. 4th 1658, 1668 (2003). Thus, there is
26 no trade secret misappropriation under Section 3426.1, subdivision (b) if the alleged trade secret is
27 neither used nor disclosed to a third party by the defendant. See Wysong Corp. v. M.I. Industries,

28

---

[10] Weinstock does not argue that he is entitled to summary judgment on this claim.

.

412 F. Supp. 2d 612, 628 (E.D. Mich. 2005) (no trade secret misappropriation where there was no evidence that defendants used, disclosed or acquired alleged trade secret technology). Accordingly, WLEC is entitled to judgment on Count VII.

## **CONCLUSION**

For the reasons discussed above, Plaintiffs' tortious interference and defamation claims are not preempted by California Uniform Trade Secrets Act, Cal. Civ. Code §§ 3426.1 *et seq*. Plaintiffs' breaches of duties of confidentiality and loyalty and conversion claims are, however, preempted by California Uniform Trade Secrets Act, Cal. Civ. Code §§ 3426.1 *et seq*. In that regard, both Defendants WLEC and Weinstock are entitled to judgment as a matter of law. Defendants WLEC and Weinstock are also entitled to judgment on Plaintiffs' tortious interference claim as Plaintiffs MDTV and Argen have failed to provide evidence to create a triable issue of fact defeating summary judgment. Defendant WLEC alone is entitled to judgment on all Counts MDTV and Argen assert against it. Accordingly, WLEC is dismissed as Third Party Defendant in the action.

**SO ORDERED**.

DATED: February 6, 2007

Hon. Roger T. Benitez
United States District Judge